2011 OK CIV APP 77

**HIGH SIERRA ENERGY, L.P., a Delaware Limited Partnership, Plaintiff/Appellee,**

v.

**Kellie A. HULL, an individual; Daniel Hull, an individual; Kyla Brown, an individual; Michael Miller, an individual; Dennis Robinson, an individual; Hull's Environmental Services, Inc., an Oklahoma corporation; Oilfield Disposal Services, L.L.C., an Oklahoma limited liability company; Hull's Oilfield, LLC, an Oklahoma limited liability company; and Arkoma Tanks, LLC, an Oklahoma limited liability company, Defendants/Appellants.**

No. 108,015.

Court of Civil Appeals of Oklahoma, Division No. 3.

April 29, 2011.

---

James C. McMillin, Vickie Buchanan, Daniel Loeffler, McAfee & Taft, Oklahoma City, Oklahoma, for Plaintiff/Appellee.

D. Kent Meyers, Evan G. Vincent, Crowe & Dunlevy, Oklahoma City, Oklahoma, and Trae Gray, The Law Offices of Trae Gray, PLLC, Coalgate, Oklahoma, for Defendants/Appellants.

BAY MITCHELL, Presiding Judge.

¶1 In a dispute arising out of a multi-million dollar purchase/sale of multiple companies, Defendants/Appellants Kellie Hull, Daniel Hull, Kyla Brown, Michael Miller, Dennis Robinson (collectively "Individual Appellants"), and Hull's Environmental Services, Inc., Oilfield Disposal Services, L.L.C., Hull's Oilfield, LLC, and Arkoma Tanks, LLC (collectively "Company Appellants") appeal the trial court's interlocutory order denying their motion to compel arbitration and for stay of the action pursuant to 12 O.S. Supp.2006 § 1879(A). Individual Appellants and Company Appellants (collectively "Appellants") contend the arbitration provision contained in the Purchase and Sale Agreement ("PSA") entered into between Kellie Hull and Plaintiff/Appellee High Sierra Energy, L.P. ("High Sierra") is applicable to all

causes of action arising under or related to the PSA.

¶ 2 Kellie Hull, along with David Hull and Billy Hare (Hare)[1], executed the PSA with High Sierra on September 10, 2007, for High Sierra's purchase of the assets of Hull's Oilfield Service, Inc., Briggett, Inc., and Briggett Transportation, and the purchase of all outstanding "membership interests" of National Coal County, LLC (also referred to as NCC, LLC (NCC)).[2] The interests acquired by High Sierra in the companies included all the tangible and intangible property held by the companies, as well as the "personal goodwill of Billy Hare, David R. Hull and Kellie A. Hull (the 'Individuals') associated with the Assets and businesses being acquired hereunder and all other assets personally held by the Individuals used or held in connection with and necessary to conduct the business enterprise comprised of the Assets of the Companies. . . ." In accordance with the PSA, High Sierra paid a purchase price of forty-two million dollars, and made an additional investment of eighteen million dollars in the purchased companies.[3]

¶ 3 High Sierra operated the acquired companies under the name NCC. At the time of the sale, David Hull and Hare were responsible for the management and daily business operations of the purchased companies. After the acquisition, High Sierra hired David Hull and Hare as general managers of NCC to continue managing the daily operations of NCC. High Sierra hired the Individual Appellants to serve as "executive-level employees" with NCC providing the Individual Appellants "access to High Sierra's confidential information and trade secrets."

¶ 4 On April 9, 2009, High Sierra commenced a lawsuit against Appellants alleging misappropriation of trade secrets and confidential information, unfair competition, unjust enrichment, misappropriation of assets and property, constructive trust, breach of fiduciary duty, and negligence.[4] High Sierra alleged in its petition that it discovered evidence in December 2008 that "David Hull and Billy Hare, with the assistance and direct participation of the Individual Defendants, had, prior to and during their employment with High Sierra, surreptitiously formed, owned, operated or expanded the Company Defendants, which currently provide services in direct unfair competition with High Sierra. Defendants wrongfully utilized and/or transferred certain assets, property and proprietary and confidential information belonging to High Sierra to the Company Defendants and other competing businesses."

¶ 5 High Sierra claimed the Individual Appellants intentionally neglected their employment duties and utilized High Sierra's assets and property to benefit the Company Appellants' competing businesses. High Sierra further alleged: "[T]he malfeasance of the Individual Defendants were (sic) part of a concerted and premeditated plan, whereby they worked in concert with David Hull and Billy Hare to sell . . . the Companies to High Sierra and then ruin NCC's operations while forming or expanding the Company Defendants and other entities to take over High Sierra's business."

---

1. David Hull and Hare are non-parties to the present litigation, but are Defendants/Appellants in the related case of *High Sierra Energy, L.P. v. David R. Hull and Billy D. Hare*, 2010 OK CIV APP 96, 241 P.3d 1139, *cert. denied*.

2. The effective date for the purchase and sale of Hull's Oilfield Service, Inc., Briggett, Inc., and Briggett Transportation, Inc. was August 1, 2007, and the effective date for the transfer of the membership interests in NCC, LLC was September 1, 2007.

3. The purchase price was paid as follows: a cash payment in the amount of $40 million and common "units" of High Sierra in the amount of $2 million, both paid one-half to Hare and one-half to David Hull and Kellie Hull.

4. This case was originally filed in the District Court of Carter County, Oklahoma, Case No. CJ–2009–127. In June 2009, Appellants filed a Joint Motion for Order Transferring Case to Oklahoma County, to which High Sierra did not object, arguing a related case between High Sierra and individuals not parties to the present case was pending in Oklahoma County *"High Sierra Energy, L.P. v. David R. Hull and Billy D. Hare*, District Court of Oklahoma County, CJ–2009–2170." The case was subsequently transferred to Oklahoma County, with the judge's order recognizing "All parties agree that in light of the related case pending there, the interests of efficiency and convenience warrant transfer of the present action to Oklahoma County."

¶6 On June 17, 2009, Appellants filed their motion to compel arbitration and stay the district court proceedings.[5] The parties agree that Kellie Hull is the only Appellant in this action who was a signatory to the PSA. Appellants argued Section 12.14 of the PSA required High Sierra's claims against Kellie Hull to be submitted to arbitration. Additionally, Appellants claimed the non-signatories to the PSA should be entitled to compel arbitration based upon equitable estoppel as recognized in *Cinocca v. Orcrist, Inc.*, 2002 OK CIV APP 123, 60 P.3d 1072. Appellants contended, "All defendants in both cases are alleged to be part of the same concerted and deliberate effort to thwart any benefit High Sierra intended to obtain from the PSA. Indeed, High Sierra's claim of interdependent and concerted misconduct is explicit, as it refers to a conspiracy involving all the defendants in both cases."

¶7 In its objection to Appellants' motion to compel arbitration, High Sierra claimed: (1) none of the causes of action arose under or invoked the terms of the PSA; (2) none of the named Defendants, other than Kellie Hull, were parties to the PSA; (3) the PSA "prohibits any non-party to the Agreement to share in any rights, benefits or remedies provided for in the agreement."

¶8 The parties agreed that Section 12.14 of the PSA contains a valid agreement to arbitrate disputes arising under the PSA. Section 12.14(a) of the PSA states:

*Arbitration.* Except as expressly provided otherwise in this Agreement, all disputes between the Parties arising under or related to this Agreement shall be solely and exclusively resolved by final and binding arbitration.

Appellants contend the PSA identifies only two exceptions to arbitration found in Sections 3.5(c) and 12.14(m) of the Agreement, both of which are inapplicable to the facts of this case.[6] Both sides agree these two exceptions are not applicable here.

¶9 High Sierra claimed that Section 12.7 of the PSA contained an additional exception to the arbitration provision in that it allegedly requires all disputes to be decided in the courts. Section 12.7 states:

*Governing Law.* All issues and questions concerning the construction, validity, enforcement and interpretation of this Agreement and the Buyer's Documents shall be governed and construed in accordance with the laws of the State of Oklahoma for contracts made and to be fully performed in such state, without giving effect to any choice-of-law rules that may require the application of laws of another jurisdiction. The parties further agree that any dispute arising out of this Agreement shall be decided by the state courts in Oklahoma City, Oklahoma, or if any action or proceeding involving such questions arises under the Constitution, laws or treaties of the United States of America, or if there is a diversity of citizenship between the parties thereto, in the United States District Court for the Western District of Oklahoma. The parties shall each submit to the jurisdiction of said court and agree that service of process by certified mail, return receipt requested, shall be sufficient to confer said courts with in personam jurisdiction.

---

5. The Motion to Compel Arbitration and Stay of Proceedings was filed in Carter County and was not ruled upon before the case was transferred. After the transfer to Oklahoma County, Appellants filed an Amended Motion to Compel Arbitration and Stay of Proceedings. On January 8, 2010, Judge Gurich denied that motion resulting in this appeal.

6. Section 3.5(c) concerns objections to the "Final Statement" (a document prepared shortly after the closing date of the PSA providing for adjustments to the purchase price) and provides: "If the parties are unable to resolve any disputed item within 15 days after the Buyer's receipt of Seller's objections, any such disputed item shall be submitted to a nationally recognized indepen-

dent accounting firm mutually agreeable to the parties who shall be instructed to resolve such disputed item within 30 days. The resolution of disputes by the accounting firm so selected shall be set forth in writing and shall be conclusive, binding and non-appealable upon the parties ..."

Section 12.14(m) of the PSA states: "To the extent that the dispute relates to a claim for indemnification under Article 11 that arises in connection with a third party claim asserted in court, then the foregoing arbitration provisions shall not be applicable to that dispute so that the matter may be brought in connection with the action involving the third party claim."

High Sierra did not elaborate on how Section 12.7 of the PSA constitutes an additional exception to the arbitration provision.

¶ 10 High Sierra further maintained that Sections 12.4 and 12.17 of the PSA specifically prohibit third-party beneficiaries[7] from asserting rights under the PSA. Section 12.4, titled *"Successors and Assigns; parties in Interest"* states:

> This Agreement shall be binding upon and shall inure solely to the benefit of the parties hereto and their respective successors, legal representatives and permitted assigns. Neither this Agreement nor any rights or obligations hereunder may be assigned without the written consent of the other parties; provided, however, Buyer shall have the right with written notice to Seller and Principals, before or after Closing, and without the consent of Seller, to assign this Agreement to a subsidiary of Buyer that is, directly or indirectly, wholly owned by Buyer. Upon any assignment, the obligations of the Buyer hereunder, shall continue. Nothing in this Agreement, express or implied, is intended to or shall confer upon any Person, other than the parties hereto and their respective successors, legal representatives and permitted assigns, any rights, benefits or remedies of any nature whatsoever under or by reason of this Agreement, and no Person shall be deemed a third party beneficiary under or by reason of this Agreement.

Section 12.17 *"No Third Party Beneficiaries"* states:

> "Nothing contained in this Agreement will entitle anyone other than Buyer or Seller or their authorized successors or assigns to any Claim, cause of action, remedy or right of any kind whatsoever."

¶ 11 The trial court conducted a hearing on Appellants' motion to compel arbitration on February 4, 2010 and overruled the same. The order memorializing such decision was filed on February 12, 2010. Appellants filed their appeal four days later.

■ ¶ 12 An order denying a motion to compel arbitration is an interlocutory order appealable by right, which we review *de novo*. *See* 12 O.S. Supp.2006 § 1879(A)(1); *see also Thompson v. Bar–S Foods Co.*, 2007 OK 75, ¶ 9, 174 P.3d 567, 572. "The interpretation of an arbitration agreement is governed by general state-law principles of contract interpretation." *Bar–S Foods*, ¶ 18, 174 P.3d at 574 (internal quotations omitted) (citing *Wilkinson v. Dean Witter Reynolds, Inc.*, 1997 OK 20, ¶ 9, 933 P.2d 878, 880).

■ ¶ 13 In seeking to compel arbitration, a party "must present a statement of the law and facts showing an enforceable agreement to arbitrate the issues presented by the petition." *Rogers v. Dell Computer Corp.*, 2005 OK 51, ¶ 16, 138 P.3d 826, 830. In determining whether "the parties have consented to arbitration, the courts will decide whether there is a valid enforceable arbitration agreement, whether the parties are bound by the arbitration agreement, and whether the parties agreed to submit the particular dispute to arbitration." *Oklahoma Oncology & Hematology P.C. v. U.S. Oncology, Inc.*, 2007 OK 12, ¶ 22, 160 P.3d 936, 944–45.

■ ¶ 14 Oklahoma law reflects this State's "strong presumption in favor of arbitration." *Towe, Hester & Erwin, Inc. v. Kansas City Fire & Marine Ins. Co.*, 1997 OK CIV APP 58, ¶ 24, 947 P.2d 594, 599. Title 12 O.S. Supp.2006 § 1857(A) declares arbitration agreements "valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." This provision reveals "a clear legislative intent that any disputes arising from the interpretation or application" of such agreements "shall have an immediate and speedy resolution by required arbitration." *Voss v. City of Oklahoma City*, 1980 OK 148, ¶ 8, 618 P.2d 925, 928. The Supreme Court also has recognized that in situations "where arbitration has been contracted for it constitutes a substantive and mandatory right." *Voss*, ¶ 5, 618 P.2d at 928. The right to compel arbitration is thus an affirmative defense to an action on contract. *See Shaffer v. Jeffery*, 1996 OK 47, ¶ 6, *915 P.2d 910, 913.*

---

7. The third-party beneficiaries would be the parties hereto who were non-signatories to the PSA (*i.e.*, all Appellants with the exception of Kellie Hull).

**¶ 15** "[C]ourts generally look with favor upon arbitration provisions as a shortcut to substantial justice with a minimum of court interference." *Long v. DeGeer,* 1987 OK 104, ¶ 5, 753 P.2d 1327, 1328. However, the courts will not impose arbitration where the parties have not agreed to it because "[a]rbitration is a matter of consent, not coercion." *Oklahoma Oncology,* ¶ 22, 160 P.3d at 944.

**¶ 16** The initial inquiry is whether the dispute at issue falls within the scope of the arbitration provision of the PSA. Section 12.14 of the PSA contains a broad arbitration provision, which specifically allows for exceptions to arbitration as "expressly provided otherwise" in the Agreement.[8] The United States Court of Appeals for the Tenth Circuit has consistently held: "Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Newmont U.S.A., Ltd. v. Insurance Co. of North America,* 615 F.3d 1268, 1274 (10th Cir.2010) (citing *Cummings v. FedEx Ground Package Sys., Inc.,* 404 F.3d 1258, 1261 (10th Cir.2005)).

**¶ 17** When considering whether a claim is arbitrable, "[W]e evaluate the factual underpinnings of the complaint rather than merely considering the labels attached to each of the causes of action it contains." *Chelsea Family Pharmacy v. Medco Health Solutions, Inc.,* 567 F.3d 1191, 1197 (10th Cir.2009). "If the allegations underlying the claims touch matters covered by the parties' [arbitration agreement], then those claims must be arbitrated, whatever the legal labels attached to them." *Id.* at 1198 (citing *P & P Indus., Inc. v. Sutter Corp.,* 179 F.3d 861, 871 (10th Cir.1999)). Oklahoma law mandates that ambiguities are to be resolved in favor of arbitration, unless the court can say with "positive assurance" that the matter is not

subject to arbitration. *City of Muskogee v. Martin,* 1990 OK 70, ¶ 8, 796 P.2d 337, 340.

**¶ 18** High Sierra's claims against Kellie Hull clearly relate to the PSA. The foundation for High Sierra's claims all rest upon the benefits High Sierra expected to receive from the PSA, as well as the alleged premeditated and concerted efforts of Appellants to deprive High Sierra of the same.[9]

**¶ 19** Section 12.7 of the PSA (quoted in ¶ 9 above) (which discusses the law governing the Agreement, sets forth the proper jurisdiction for claims asserted under the PSA and requires "any dispute" to be decided in the courts) contains no reference to arbitration. On the other hand, Section 12.14 (quoted in ¶ 8 above) requires "all disputes" to be arbitrated. There is an obvious ambiguity between these sections regarding the applicability of the arbitration provision and specifically, which, if any, disputes under the PSA are subject to arbitration.

**¶ 20** This Court agrees with Appellants that if Section 12.7 of the PSA is read as an exception to the arbitration provision in Section 12.14, the arbitration clause would be rendered meaningless as it would remove all disputes from arbitration. Kellie Hull and High Sierra clearly and unambiguously agreed to resolve certain disputes through arbitration. Oklahoma law commands that "where arbitration has been contracted for it constitutes a substantive and mandatory right." *Voss,* ¶ 5, 618 P.2d at 928. We cannot say "with positive assurance" that a dispute concerning the propriety of the sale of NCC, the employment and fiduciary duties owed by Kellie Hull and alleged misappropriation and unfair competition by Kellie Hull is not subject to arbitration in accordance with Section 12.14 of the PSA. *See City of Muskogee,* ¶ 8, 796 P.2d at 340. Accordingly, the ambiguity must be resolved in favor of compelling arbitration of the claims against Kellie Hull.

8. As previously discussed, the exceptions to Section 12.14 expressly set forth in the PSA are inapplicable to the issues in this case.

9. For example, High Sierra asserted in its Petition: "In addition to forming, assisting and operating the Company Defendants, Defendants used

the resources of High Sierra, including the Assets, Intangible Property and Personally Held Property (see footnote 1), purchased by High Sierra under the Purchase Agreement, for their own material benefit."

¶ 21 The next question is whether the non-signatory Appellants can compel arbitration of High Sierra's claims. High Sierra argues Sections 12.4 and 12.17 of the PSA (both quoted in ¶ 10 above) specifically prohibit third parties from attempting to enforce any provision of the PSA. Oklahoma law specifically recognizes that:

One to whom, by the express terms of a contract, no obligation is due from its promissor, cannot qualify for the status of an intended or implied third-party beneficiary. The express contractual negation of the promissor's duty to the third-party status seeker operates to exclude that third party from legal recognition as third-party promisee.

*May v. Mid–Century Ins. Co.,* 2006 OK 100, ¶ 25, 151 P.3d 132, 141. Appellants, however, have not pursued arbitration as third-party beneficiaries to the PSA, but instead sought to compel arbitration based upon the theory of equitable estoppel. Furthermore, this Court finds no legal authority to support High Sierra's contention that a clause excluding third-party beneficiaries would prohibit a non-signatory from compelling arbitration.

¶ 22 Oklahoma has approved limited circumstances in which a non-signatory to an agreement may compel arbitration, including "estoppel, when the claims are integrally related to the contract containing the arbitration clause." *Carter v. Schuster,* 2009 OK 94, ¶ 15, 227 P.3d 149, 153 (citing *Thomson–CSF, S.A. v. American Arbitration Ass'n,* 64 F.3d 773, 779). The Oklahoma Court of Civil Appeals has applied the theory of equitable estoppel to allow a non-signatory to compel arbitration against a signatory "when the signatory raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and another signatory." *Cinocca v. Orcrist, Inc.,* 2002 OK CIV APP 123, ¶ 18, 60 P.3d 1072, 1074. *See also B.A.P., L.L.P. v. Pearman,* 2011 OK CIV APP 30, ¶ 16, 250 P.3d 332 (mandate issued March 7, 2011).

¶ 23 In *Cinocca,* the Court of Civil Appeals relied upon the decision in *MS Dealer Serv.*

*Corp. v. Franklin,* 177 F.3d 942 (11th Cir. 1999), wherein the Eleventh Circuit stated:

"Although arbitration is a contractual right that is generally predicated on an express decision to waive the right to trial in a judicial forum, this court has held that the lack of a written arbitration agreement is not an impediment to arbitration." This is because "there are certain limited exceptions, such as equitable estoppel, that allow nonsignatories to a contract to compel arbitration."

*Id.* at 947 (citing *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753, 756–57 (11th Cir.1993)). Following *Franklin, Cinocca* defined the circumstances under which equitable estoppel would allow a non-signatory to compel arbitration: "Where claims against the nonsignatory and the signatory are so 'intertwined', application of equitable estoppel is warranted. Otherwise, arbitration proceedings between the signatories 'would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.'" *Cinocca,* ¶ 21, 60 P.3d at 1075 (citing *Franklin,* 177 F.3d at 947). In recognizing the validity of such situations, the Oklahoma Supreme Court noted: "Under such facts, the nonsignatory is agreeing to arbitrate. The signatory is merely being held to his previous agreement to arbitrate." *Carter,* ¶ 25, 227 P.3d at 156.

¶ 24 As discussed above, High Sierra's allegations are "integrally related" to the PSA. *Carter,* ¶ 15, 227 P.3d at 153. High Sierra's claims against Kellie Hull and the non-signatory Appellants are also substantially "intertwined" to warrant the application of equitable estoppel to compel arbitration in this case. High Sierra's Petition clearly alleges contrived efforts among the Appellants to injure High Sierra and deprive it of the benefits conferred under the PSA. High Sierra refers throughout the Petition to the confidential proprietary information it purchased with NCC that was misappropriated by the Individual Appellants for the benefit of the Company Appellants.[10] High Sierra's claims

---

10. For example, "High Sierra purchased certain confidential information in the Acquisition and then made additional investments to further develop such confidential information.... Individual Defendants worked in concert with the Company Defendants to share and use High Sierra's

aver "substantially interdependent and concerted misconduct" by both Kellie Hull and the non-signatory Appellants.

¶ 25 Because we conclude the ambiguities contained in the PSA must be resolved in favor of arbitration and the claims against the Appellants are inherently inseparable, we reverse the order of the trial court overruling Appellants' motion to compel arbitration and for stay of the action.

¶ 26 REVERSED AND REMANDED.

JOPLIN, J., and BELL, J. (sitting by designation), concur.

confidential and proprietary information for     their material benefit."