**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 3, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

EEC, INC., an Oklahoma corporation,

Plaintiff-Appellee,

v.

BAKER HUGHES OILFIELD
OPERATIONS, INC., a California
corporation,

Defendant-Appellant.

No. 11-6121
(D.C. No. 5:10-CV-00873-L)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and
**MATHESON**, Circuit Judge.

---

Defendant Baker Hughes Inteq, Inc. (Baker)[1] appeals the district court's

order denying its motion to compel arbitration. We have jurisdiction under

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Appellant stated in its Notice of Appeal that its correct name is Baker Hughes Oilfield Operations, Inc.

9 U.S.C. § 16(a)(1)(C). We reverse and remand for entry of an order to compel arbitration.

## I. BACKGROUND

EEC, Inc. (EEC) and Baker agreed in June 2009 for Baker to provide drilling equipment for use in EEC's horizontal oil and natural gas well in Payne County, Oklahoma. The equipment was lost in the well. EEC filed suit in Oklahoma state court alleging that Baker's negligence damaged its well. Baker removed the case to federal court, invoking diversity jurisdiction, and filed counterclaims for the value of its equipment. Baker also sought to compel arbitration.

Several documents are relevant to the dispute. The AziTrak Offer spelled out the terms of EEC's use of Baker's equipment and included an arbitration clause. In addition, Baker prepared and EEC signed numerous Delivery Tickets, each of which contained an arbitration clause that differed somewhat from the arbitration clause contained in the AziTrak Offer.[2]

The district court found that the arbitration clauses were illusory because they permitted Baker unilaterally to selectively enforce the terms, including the scope of arbitration, and that the conflicting language in the AziTrak Offer and the Delivery Tickets presented an ambiguity. Consequently, the court ruled that

---

[2]    There were numerous Delivery Tickets issued in connection with the transaction, each of which contained identical provisions.

the arbitration clauses were unenforceable.  The court also denied Baker's motion to reconsider.  Further, the court enjoined Baker from proceeding with arbitration, and stayed further district court proceedings pending appeal of its orders.

Baker appeals both the judgment and the order denying its motion to reconsider, asserting that the district court erred in holding that the arbitration clauses were illusory.  Baker also claims that the district court erred in considering both the AziTrak Offer and the Delivery Tickets.  EEC responds that it never accepted the AziTrak Offer, any contracts between the parties are ambiguous and illusory, and the differences between the arbitration clauses in the AziTrak Offer and the Delivery Tickets render both unenforceable.

## II.  LEGAL STANDARDS

The Federal Arbitration Act embodies the national policy favoring arbitration.  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (citing 9 U.S.C. §§ 1-16).  "Although the [Supreme] Court has . . . long recognized and enforced a liberal federal policy favoring arbitration agreements, . . . the *question of arbitrability*[] is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citation omitted) (internal quotation marks omitted).  "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* (internal quotation marks omitted).  "When deciding

whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *accord Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006) ("Generally, courts should apply ordinary state-law principles that govern the formation of contracts to determine whether a party has agreed to arbitrate a dispute." (internal quotation marks omitted)). We review de novo the district court's order denying a motion to compel arbitration. *Cummings v. Fedex Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005).

## III. DISCUSSION

EEC argues that the arbitration agreements are illusory and unenforceable because (1) it never agreed to the AziTrak Offer except as to price, (2) Baker reserved to itself the right to alter the contracts at will and in fact attempted to modify the arbitration agreement, and (3) there are differences between the arbitration clauses in the AziTrak Offer and the Delivery Tickets. Baker contends that (1) by "calling out" its equipment, EEC agreed to the terms of the AziTrak Offer, (2) both the AziTrak Offer and the Delivery Tickets provide for modification only upon the written consent of both parties, and (3) both documents require arbitration.

-4-

*A. EEC Accepted the AziTrak Offer*

EEC does not challenge Baker's assertions that the cover letter for the AziTrak Offer states: "your calling out our products/services will constitute your acceptance of all terms and conditions set forth in this quotation," Aplt. App. at 79, or that EEC called out Baker's equipment. "Oklahoma follows traditional contract principles in permitting acceptance of an offer by performance: 'Performance of the conditions of a proposal, or the acceptance of the consideration offered with a proposal, is an acceptance of the proposal.'" *Hardin*, 465 F.3d at 476 (quoting Okla. Stat. tit. 15, § 70). Accordingly, we conclude that by calling out Baker's equipment, EEC accepted the terms of the AziTrak Offer.

*B. Arbitration Clauses Are Not Illusory*

The district court determined that the arbitration clauses in the AziTrak Offer and the Delivery Tickets were illusory because they "contain[ed] different and often contradictory terms regarding the scope of arbitration and whether the terms may be amended unilaterally or by agreement," thus allowing Baker to vary them at will. Aplt. App. at 161-62. *See Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002) (holding "that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its

scope is illusory").[3]  Both arbitration clauses, however, contain virtually identical

language providing for a broad scope of arbitration and a limitation on

amendment.

The AziTrak Offer's arbitration clause provided:

> ANY DISPUTE ARISING OUT OF OR IN CONNECTION WITH
> THIS AGREEMENT . . . SHALL BE RESOLVED BY FINAL AND
> BINDING ARBITRATION, AS THE SOLE AND EXCLUSIVE
> REMEDY OF THE PARTIES TO THE DISPUTE, CONDUCTED IN
> ACCORDANCE WITH THE COMMERCIAL RULES OF
> ARBITRATION OF THE AMERICA[N] ARBITRATION
> ASSOCIATION (THE "RULES"), WHICH ARE DEEMED TO BE
> INCORPORATED BY REFERENCE.

Aplt. App. at 97.  In addition, the AziTrak Offer stated that it "may only be

amended by an agreement executed by both parties."  *Id.*

Similarly, the Delivery Tickets provided for arbitration as follows:

> Any Dispute arising out of or in connection with this Agreement . . .
> shall be referred to and determined by binding arbitration, as the sole
> and exclusive remedy of the parties as to the Dispute, conducted in
> accordance with American Arbitration Association ("AAA")

---

[3]     For its argument that the arbitration clauses are illusory, EEC also invokes a 2003 Customer Agreement prepared by Baker and signed by EEC.  The document states that its purpose is to obtain credit information from the applicant. It further provides that the applicant agrees to be bound by any of Baker's terms and conditions which may appear on any document, regardless of whether EEC signed it.  We reject EEC's claim that this language bears upon the current dispute.  The subsequent, job-specific 2009 AziTrak Offer and Delivery Tickets supersede and control over the 2003 Customer Agreement.  *Cf. DeHart v. Independent School Dist. No. 1*, 259 P.3d 877, 882 (Okla. Civ. App.) (holding subsequent contract covering the same terms as an earlier contract superseded and rescinded the earlier contract), *cert. denied*, (May 19, 2011).

arbitration rules for commercial disputes, as in effect on the date hereof (the "Rules"), which are deemed to be incorporated by reference, and the Federal Arbitration Act (Title 9 of the United States Code) . . . .

*Id.* at 109. As with the AziTrak Offer, the Delivery Tickets included the provision: "This Agreement . . . may only be amended by an agreement executed by both parties." *Id.*

In the district court Baker relied on the arbitration clauses in both the AziTrak Offer and the Delivery Tickets. On appeal, however, Baker relies on the AziTrak Offer alone to compel arbitration. As such, EEC asserts that this demonstrates Baker's attempt to "unilaterally defin[e] . . . and selectively enforc[e] the terms governing the parties' relationship." Aplee. Br. at 15 (emphasis omitted).

The court is not bound by a party's characterization of its claims. *See Union Pac. R.R. Co. v. United States ex rel. U.S. Army Corps of Eng'rs*, 591 F.3d 1311, 1314 (10th Cir. 2010) (holding court is not bound by party's characterization of claim) (collecting cases). Moreover, under Oklahoma law, "[t]he contract must be construed to carry out the intent of the parties at the time the contract was made. . . . In the search for the parties intent, several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." *High Sierra Energy, L.P. v. Hull*, 241 P.3d 1139, 1143 (Okla. Civ. App. 2010) (citation omitted) (internal

quotation marks and brackets omitted).  Consequently, it is proper to consider

both the AziTrak Offer and the Delivery Tickets.

Both the Azitrak Offer and the Delivery Tickets provide that any changes

must be agreed to by both parties.  Therefore, Baker did not retain the unfettered

right to alter or cancel the arbitration clauses unilaterally.  "[U]nder Oklahoma

law[,] an arbitration agreement allowing a defendant company the unilateral right

to modify or terminate the agreement is not illusory so long as reasonable

restrictions are placed on this right."  *Hardin*, 465 F.3d at 479.  The requirement

that both parties agree to any amendment is "sufficient to avoid rendering the

parties' [a]greement[s] to arbitrate illusory."  *Id.* at 478.

### C.  *The Arbitration Clauses Are Not Ambiguous*

EEC also contends that the Delivery Tickets created an ambiguity

demonstrating Baker's ability to change the terms unilaterally.  EEC contends that

three clauses in the Delivery Tickets, other than the arbitration clause,

demonstrate that Baker could modify any contract terms.[4]  These other provisions,

however, pertain to whether the Delivery Tickets superseded the AziTrak Offer,

---

[4]     The Delivery Tickets stated:  (1) they superseded "all prior oral or written agreements," Aplt. App. at 109; (2) any orders Baker accepted were governed by the Delivery Tickets' terms "and any additional terms proposed or agreed to in writing" by Baker's authorized agent, *id.*; and (3) the terms were as stated therein "and/or [in the] current Contract of Work Agreement," *id.* at 108.

not to whether Baker could unilaterally modify or selectively enforce the parties' agreement to arbitrate.

"Oklahoma law commands that where arbitration has been contracted for it constitutes a substantive and mandatory right." *High Sierra Energy, L.P. v. Hull,* 259 P.3d 902, 907 (Okla. Civ. App. 2011) (internal quotation marks omitted). Oklahoma law directs that '[a]rbitration should be compelled unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Thompson v. Bar-S Foods Co.*, 174 P.3d 567, 572 (Okla. 2007) (internal quotation marks omitted).

The arbitration clauses in both the AziTrak Offer and the Delivery Tickets "unambiguously reflect the parties' intent that [any dispute arising out of or in connection with their Agreement is] arbitrable." *Shell Oil Co. v. CO2 Comm., Inc.*, 589 F.3d 1105, 1109 (10th Cir. 2009). Therefore, even if other clauses in the Delivery Tickets make it unclear whether the Delivery Tickets control over the AziTrak Offer, we cannot say with positive assurance that the disputes are not subject to arbitration. Construing the AziTrak Offer and the Delivery Tickets to carry out the intention of the parties at the time of contracting, we determine that the arbitration clauses are not ambiguous.

### D. Differences in Arbitration Clauses Are for Arbitrator to Resolve

Finally, we consider whether the differences in the AziTrak Offer and Delivery Tickets arbitration clauses render the clauses unenforceable. We

conclude that they do not because the differences concern matters the parties would likely expect the arbitrators to decide. The differences in the two clauses are as follows:

1.    The AziTrak offer specifically recognizes the attorney-client and attorney work-product privileges. The Delivery Tickets do not mention those privileges.

2.    The AziTrak Offer provides that "[t]he Parties shall treat all matters relating to the arbitration as confidential," including the fact of arbitration and matters discussed therein. Aplt. App. at 97. The Delivery Tickets do not mention confidentiality.

3.    The AziTrak Offer does not address discovery. The Delivery Tickets provide that the arbitration panel shall "limit[] discovery to only that which is absolutely necessary to enable the Tribunal to render a fair decision which reflects the parties' intent set forth in this Agreement." *Id.* at 109.

4.    The AziTrak Offer does not provide a time limit for resolution. The Delivery Tickets state that the decision shall be rendered within 120 days after the third arbitrator is selected.

5.    The AziTrak Offer and the Delivery Tickets have different provisions for the number of arbitrators and their selection.

As discussed above, "a gateway dispute about whether the parties are bound by a given arbitration clause raises a question of arbitrability for a court to decide." *Howsam*, 537 U.S. at 84 (internal quotation marks omitted). Matters concerning how the arbitration is to be conducted, on the other hand, are "procedural questions" which are "presumptively *not* for the judge, but for an arbitrator, to decide." *Id.* (internal quotation marks omitted). In four of the five differences identified above, there is no conflict between the AziTrak Offer and the Delivery Tickets. EEC argues without authority or explanation that the differences "affect the parties' substantive rights." Aplee. Br. at 17. But the differences concern "the kind of arbitration proceeding" the AziTrak Offer and the Delivery Tickets allow, and "comes down to a matter of contract interpretation, which the arbitrator is well qualified to address." *Emp'rs Ins. Co. of Wausau v. Century Indem. Co.*, 443 F.3d 573, 578 (7th Cir. 2006). Accordingly, the differences in the arbitration clauses do not render them unenforceable.

## IV. CONCLUSION

The district court's judgment denying Baker's motion to compel arbitration is REVERSED and the case is REMANDED with directions to order the parties to pursue arbitration. The district court's order enjoining Baker from pursuing

arbitration pending this appeal is DISSOLVED.  EEC's motion to waive oral

argument is GRANTED.

Entered for the Court


John C. Porfilio
Senior Circuit Judge