EXENCIAL WEALTH ADVISORS v. MORGAN STANLEY SMITH BARNEY
2024 OK CIV APP 29
Case Number: 121065
Decided: 11/22/2024
Mandate Issued: 12/31/2024
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2024 OK CIV APP 29, __ P.3d __

 

EXENCIAL WEALTH ADVISORS LLC, and BURNS WEALTH MANAGEMENT, INC., Plaintiffs/Appellees,
v.
MORGAN STANLEY SMITH BARNEY, LLC, Defendant/Appellant,
and
MATTHEW VENTURA, Individually, Defendant.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE NATALIE MAI, TRIAL JUDGE

REVERSED AND REMANDED WITH INSTRUCTIONS

William B. Federman, Joshua D. Wells, Meagon R. Eagon, FEDERMAN & SHERWOOD, Oklahoma City, Oklahoma, for Plaintiffs/Appellees

Lysbeth George, LIZ GEORGE AND ASSOCIATES, Oklahoma City, Oklahoma
and
Jana L. Knott, BASS LAW, Oklahoma City, Oklahoma
and
Salvador M. Hernandez, RILEY & JACOBSON, PLC, Nashville, Tennessee, for Defendant/Appellant

JOHN F. FISCHER, JUDGE:

¶1 Morgan Stanley Smith Barney, LLC (Morgan Stanley), appeals the district court's order denying its motion to compel arbitration. Exencial Wealth Advisors LLC and Burns Wealth Management, Inc. (Exencial, unless the context requires otherwise) sued their former employee and partner, Matthew Ventura, and Morgan Stanley after Ventura went to work for Morgan Stanley. The Exencial Operating Agreement signed by Ventura contained an arbitration clause, and the district court granted Ventura's motion to compel Exencial to arbitrate its claim against him. Morgan Stanley also filed a motion to compel arbitration, which the district court denied.

¶2 The issue in this appeal is whether Morgan Stanley, a non-signatory to the Exencial/Ventura Operating Agreement containing the arbitration agreement, can compel a signatory, Exencial, to arbitrate its claim. Exencial's claim against Morgan Stanley arises out of the contract containing the arbitration agreement, and the alleged breach of that contract is the essence of Exencial's suit. In addition, Exencial's claim against Morgan Stanley is integrally related to its claim against Ventura. For those reasons, we hold that Exencial is equitably estopped from refusing to arbitrate its claim against Morgan Stanley. The district court's order denying Morgan Stanley's motion to compel arbitration is reversed, and this case is remanded with instructions to grant Morgan Stanley's motion and order Exencial to also arbitrate its claim against Morgan Stanley.

BACKGROUND

¶3 Exencial provides "investment advisory and wealth management services." Burns Wealth Management is the majority owner and a member of Exencial. Ventura was employed by Exencial on January 8, 2016. In 2019, Ventura was offered and agreed to purchase an equity interest in Exencial. The terms of that interest, when purchased, were governed by Exencial's 2019 Operating Agreement.

¶4 In October of 2020, Ventura resigned his position with Exencial and went to work for Morgan Stanley. Exencial sued Ventura alleging breach of contract, breach of fiduciary duty, loan default and tort theories of liability. An amended petition filed in September of 2022 added Morgan Stanley as a defendant. Exencial alleged that Morgan Stanley tortiously interfered with its contracts with Ventura, colluded with Ventura and induced Ventura to breach his contracts with Exencial, including the Exencial Operating Agreement.

¶5 The Exencial Operating Agreement contains an arbitration clause which provides:

ANY CONTROVERSY OR CLAIM BETWEEN THE PARTIES HERETO RELATING TO THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, ANY CLAIM BASED ON OR ARISING FROM A TORT, SHALL, TO THE EXTENT PERMITTED BY APPLICABLE LAW, BE DETERMINED BY BINDING ARBITRATION . . . .

Exencial, Ventura and Burns Wealth Management are parties to that Agreement. Morgan Stanley is not. However, both Ventura and Morgan Stanley filed motions to compel arbitration of Exencial's claims. Morgan Stanley argued that even though it was not a signatory to the Exencial Operating Agreement, Exencial should be bound by its agreement to arbitrate contained in that document and estopped from refusing to arbitrate its claim against Morgan Stanley. The district court granted Ventura's motion to compel arbitration but denied Morgan Stanley's motion. The district court's order denying Morgan Stanley's motion to compel arbitration is the subject of this appeal.

STANDARD OF REVIEW

¶6 Neither party addresses whether the agreement to arbitrate at issue in this case is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 through 402, or the Oklahoma Uniform Arbitration Act, 12 O.S.2021 §§ 1851See Sutton v. David Stanley Chevrolet, Inc., 2020 OK 87475 P.3d 847

¶7 When a motion to compel arbitration has been filed "showing an agreement to arbitrate and alleging another person's refusal to arbitrate . . . the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate." 12 O.S.2021 § 1858de novo standard." Signature Leasing LLC v. Buyer's Group LLC, 2020 OK 50466 P.3d 544Okla. Oncology & Hematology P.C. v. US Oncology, Inc., 2007 OK 12160 P.3d 936Rogers v. Dell Computer Corp., 2005 OK 51138 P.3d 826Howell's Well Serv. v. Focus Grp. Advisors, 2021 OK 25507 P.3d 623. Fraternal Order of Police, Lodge 108 v. City of Ardmore, 2002 OK 1944 P.3d 569

ANALYSIS

¶8 Morgan Stanley asserts two arguments in support of its motion to compel arbitration. The first is based on an exception to the rule that only parties who agree to arbitrate can be compelled to arbitrate. Morgan Stanley points out that this Court and others have held that a party who sues another based on claims that arise from a contract containing an arbitration agreement, or that are integrally related to claims that are subject to an arbitration agreement, can be estopped from refusing to arbitrate claims against a non-signatory to the arbitration agreement. Morgan Stanley's motion relies on this exception.

¶9 In addition, Morgan Stanley contends that Exencial specifically sought to compel arbitration of its claim against Morgan Stanley and that Morgan Stanley agreed to arbitrate that claim. Morgan Stanley cites allegations in the Amended Petition requesting the district court to order the parties to arbitration and argues that it accepted that "offer."

I. Agreements to Arbitrate

¶10 In most cases, "arbitration is simply a matter of contract between the parties." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S.Ct. 1920, 1924 (1995). And, "courts will enforce arbitration agreements according to the terms of the parties' contract . . . ." Oklahoma Oncology & Hematology P.C. v. US Oncology, Inc., 2007 OK 12Id., 160 P.3d at 944-45 (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920 (1995)).Accord Williams v. TAMKO Bldg. Prods., Inc., 2019 OK 61451 P.3d 146Oklahoma Oncology, 2007 OK 12Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S.Ct. 588, 591 (2002)). Accord Magel v. Nuveen, 2023 OK CIV APP 13529 P.3d 92815 O.S.2021 § 2

II. Exceptions to the Agreement to Arbitrate Rule

¶11 It is undisputed that Morgan Stanley is not a signatory to the Exencial Operating Agreement, or the arbitration clause contained therein. But that does not determine the arbitrability issue in this case. "Under the initial step of determining whether the parties have a written agreement to arbitrate, courts should apply state contract law." Rogers v. Dell Computer Corp., 2005 OK 51138 P.3d 826First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924 (1995)). "Oklahoma statutes provide a comprehensive scheme which governs contractual agreements." Pitco Prod. Co. v. Chaparral Energy, Inc., 2003 OK 563 P.3d 541See also Oklahoma Oncology, 2007 OK 12

¶12 Further, the Federal Arbitration Act "does not preempt the traditional principals [sic] of state agency and contract law." Williams v. TAMKO Bldg. Prods., Inc., 2019 OK 61451 P.3d 146Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630-31, 129 S. Ct. 1896, 1902 (2009)). There are recognized state contract law exceptions to the rule that only signatories to an arbitration agreement can be compelled to arbitrate. Specifically, "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631, 129 S.Ct. 1896, 1902 (2009) (quoting 21 R. Lord, Williston on Contracts § 57:19, p. 183 (4th ed. 2001)). Accord GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC, 590 U.S. 432, 437, 140 S.Ct. 1637, 1643-44 (2020).

¶13 The Oklahoma Supreme Court has observed that courts have "identified five theories for binding non-signatories to arbitration agreements: 1) incorporation by reference . . . 2) assumption . . . 3) agency . . . 4) veil-piercing/alter ego . . . and 5) estoppel . . . ." Carter v. Schuster, 2009 OK 94227 P.3d 149Thomson-CSF, S.A. v. American Arb. Ass'n, 64 F.3d 773, 776-79 (2d Cir. 1995)).MS Dealer Service Corp. v. Franklin, 177 F.3d 942 (11th Cir. 1999), focuses on the estoppel exception to the general rule. Id. at 947.

¶14 Morgan Stanley relies on the estoppel, also referred to as the equitable estoppel, exception. The Oklahoma Supreme Court has addressed that exception on two occasions. In Carter v. Schuster, the Court denied a signatory's request to compel arbitration of claims against a non-signatory who only signed the arbitration agreement in a representative capacity, a fact known to the signatory. In Williams v. TAMKO Bldg. Prods., Inc., 2019 OK 61451 P.3d 146

¶15 In both Carter and Williams, the Court stated the elements of equitable estoppel as follows:

"(1) a false representation or concealment of facts, (2) made with actual or constructive knowledge of the facts, (3) to a person without knowledge of, or the means of knowing, those facts, (4) with the intent that it be acted upon, and (5) the person to whom it was made acted in reliance upon it to his detriment."

Carter, 2009 OK 94Burdick v. Indep. Sch. Dist. No. 52 of Okla. Cnty., 1985 OK 49702 P.2d 48Id. ¶ 15, n.4, 227 P.3d at n.4. Finding no fraudulent representation by the non-signatory in either case, both the Carter and Williams Courts refused to compel the non-signatory to arbitrate. Carter, 2009 OK 94Williams, 2019 OK 61

¶16 Exencial argues that equitable estoppel cannot apply because it made no representation, false or otherwise, to Morgan Stanley. Exencial's articulation of the equitable estoppel doctrine in this context is too narrow. The equitable estoppel doctrine is also "employed to prevent one party from taking a legal position inconsistent with an earlier action that places the other party at a disadvantage." Merritt v. Merritt, 2003 OK 6873 P.3d 878Carter. "Under such facts, the nonsignatory is agreeing to arbitrate. The signatory is merely being held to his previous agreement to arbitrate." Carter, 2009 OK 94 ¶ 25, 227 P.3d at 156. The fact that Exencial made no false representation does not determine the applicability of equitable estoppel in this case for the reasons discussed in Part III of this Opinion.

¶17 However, in both Carter and Williams it was the signatory to the arbitration agreement seeking to compel a non-signatory to arbitrate. Here, Morgan Stanley, a non-signatory to the arbitration agreement, is voluntarily agreeing to arbitrate by seeking to enforce that arbitration agreement against a party who had already signed that agreement. Consequently, Carter and Williams do not determine the arbitrability issue in this case.

III. Morgan Stanley's Equitable Estoppel Argument

¶18 Although our Supreme Court has not decided whether the equitable estoppel exception applies when a non-signatory to the arbitration agreement seeks to compel a signatory to that agreement to arbitrate its claims, this Court and the United States Court of Appeals for the Tenth Circuit, applying Oklahoma law, have addressed that issue on several occasions. In each case, the court found that the equitable estoppel doctrine was applicable, and would allow the Court to estop the signatory from avoiding arbitration if: (1) "the dispute arises out of or relates to the agreement containing the arbitration clause," B.A.P., L.L.P. v. Pearman, 2011 OK CIV APP 30250 P.3d 332Cinocca v. Orcrist, Inc., 2002 OK CIV APP 12360 P.3d 1072See Ferrell v. Cypress Env't Mgmt.-TIR, LLC, No. 20-5092, 2021 WL 5576677, at *1 (10th Cir. Nov. 30, 2021) (applying Oklahoma contract law to order a subcontractor's employee, whose employment contract contained an arbitration agreement, to arbitrate claims against the energy company that his employer performed services for). Morgan Stanley argues that both grounds for invoking the equitable estoppel exception are present in this case.

A. Exencial's Claim Arises Out of the Contract
Containing the Arbitration Agreement

¶19 The basis for Exencial's claims in this action are well-documented in Morgan Stanley's brief-in-chief and will only be summarized here. For purposes of this Opinion, it is sufficient that the district court found Exencial's claims against Ventura were covered by the arbitration agreement in the Exencial Operating Agreement, and Exencial has not appealed that decision. Exencial essentially alleges that Morgan Stanley was aware of that Operating Agreement and the related Ventura contracts and credit agreement, but conspired with and wrongfully induced Ventura to breach those agreements and intentionally interfered with the agreements Exencial had with Ventura. Not only must Exencial rely on those agreements, and specifically the Exencial Operating Agreement, but also it must prove that Ventura breached those agreements in order to sustain its claim against Morgan Stanley. According to the Tenth Circuit, under Oklahoma law: "When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of" a written agreement containing an arbitration clause, "the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." Reeves v. Enter. Prods. Partners, LP, 17 F.4th 1008, 1013 (10th Cir. 2021) (citation omitted).

¶20 Exencial has alleged no claim against Morgan Stanley that does not depend on proof that Ventura, in concert with Morgan Stanley, breached the Exencial Operating Agreement. Because the Exencial Operating Agreement contains an arbitration agreement, Exencial's claim against Morgan Stanley "arises out of or relates to the agreement containing the arbitration clause." Ferrell v. Cypress Env't Mgmt.-TIR, LLC, No. 20-5092, 2021 WL 5576677, at *1 (10th Cir. Nov. 30, 2021). This Court compelled a signatory to arbitrate claims with a non-signatory on this basis in B.A.P., L.L.P. v. Pearman, 2011 OK CIV APP 30250 P.3d 332

B. Exencial's Claim Against Morgan Stanley is Integrally
Related to its Claim Against Ventura

¶21 Morgan Stanley also argues that Exencial's claim is subject to arbitration because it alleges "substantially interdependent and concerted misconduct" by Ventura, a signatory to the arbitration agreement, and Morgan Stanley, a non-signatory. Ferrell, 2021 WL 5576677, at *1 (10th Cir. Nov. 30, 2021) (quoting Cinocca v. Orcrist, Inc., 2002 OK CIV APP 12360 P.3d 1072

¶22 Excencial's Amended Petition does not state specific legal theories for its claim against Morgan Stanley, nor is it required to do so. See 12 O.S.2021 § 2008Darrow v. Integris Health, Inc., 2008 OK 1176 P.3d 1204

¶23 As explained by the Tenth Circuit, "equitable estoppel applies when the signatory raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Reeves v. Enter. Prods. Partners, LP, 17 F.4th 1008, 1013 (10th Cir. 2021) (citation omitted). In Reeves, the court noted that Oklahoma's appellate court "used this theory of equitable estoppel in two previous cases." Id. at 1010 (citing Cinocca v. Orcrist, Inc., 2002 OK CIV APP 12360 P.3d 1072High Sierra Energy, L.P. v. Hull, 2011 OK CIV APP 77259 P.3d 902

¶24 In Cinocca, this Court compelled a former member of a law firm to arbitrate claims against a third-party, even though the third-party was not a party to the law firm's employment contract containing the arbitration agreement. The firm hired the third-party to "wipe" firm data from her computer. This Court ordered the former member of the firm to arbitrate her claim against the third-party because her claim was "so 'intertwined'" with her claim against the law firm that "application of equitable estoppel is warranted." Cinocca v. Orcrist, Inc., 2002 OK CIV APP 123

¶25 In High Sierra Energy, non-signatories to a sales contract containing an arbitration agreement were able to compel the purchaser to arbitrate claims "integrally related" to the sales agreement. The signatory's petition alleged "substantially interdependent and concerted misconduct" by the non-signatory individuals with the conduct that was the basis for the purchaser's claims against the seller and other signatories to the sales agreement. High Sierra Energy, L.P. v. Hull, 2011 OK CIV APP 77259 P.3d 902

¶26 Like the Tenth Circuit in Reeves: "We do not find that the facts here are . . . materially different than those in Cinocca and High Sierra." Reeves v. Enter. Prods. Partners, LP, 17 F.4th 1008, 1015 (10th Cir. 2021). Concerted misconduct by Morgan Stanley and Ventura is the essence of Exencial's claim against Morgan Stanley. And, Morgan Stanley's alleged wrongdoing is integrally related to Exencial's claim against Ventura. The latter is clearly subject to arbitration. We hold that Exencial is equitably estopped from refusing to arbitrate its claims against Morgan Stanley.

IV. The Parties' "Agreement" to Arbitrate

¶27 In support of its argument that Exencial agreed to arbitrate its claim against Morgan Stanley, Morgan Stanley cites two provisions of Exencial's Amended Petition: (1) paragraph 28 in which Exencial asked the district court to "compel the Parties to arbitrate the claims . . . . ," and (2) paragraph 37 in which Exencial sought "an order from this Court compelling arbitration of the below claims . . . ." Morgan Stanley pointed out that it was one of the "Parties" named in Exencial's Amended Petition against whom "claims" had been made, and also, after service of Exencial's amended petition, Morgan Stanley notified Exencial's counsel: "No court order is necessary, as Morgan Stanley agrees to arbitrate its dispute with [Exencial] . . . ." Based on these allegations, Morgan Stanley argues that Exencial offered to arbitrate its claim against Morgan Stanley and that Morgan Stanley accepted that offer.

¶28 Exencial argues that Morgan Stanley was not a party to its Operating Agreement and that it did not intend to refer to Morgan Stanley in its Amended Petition when it asked the district court to order the "parties" to arbitrate. Intriguing as Morgan Stanley's argument may be, we need not decide that issue because we have held that Exencial is equitably estopped from refusing to arbitrate its claim against Morgan Stanley.

¶29 Exencial's position, however, underscores the appropriateness of arbitration in this case. "Estoppel is a doctrine used to prevent injustice." Carter v. Schuster, 2009 OK 94Estate of Allen, 1987 OK 45738 P.2d 142Reeves v. Enter. Prods. Partners, LP, 17 F.4th 1008, 1013 (10th Cir. 2021) (quoting Grigson v. Creative Artists Agency L.L.C., 210 F.3d 524, 528 (5th Cir. 2000). Permitting Exencial to offer to arbitrate its claims against Morgan Stanley and then withdraw that offer after it had been accepted would be unfair.

CONCLUSION

¶30 Exencial filed this action against its former employee, Matthew Ventura, alleging that Ventura breached various contracts between the parties including the Exencial Operating Agreement. Exencial added Morgan Stanley, Ventura's subsequent employer, as a defendant alleging that Morgan Stanley colluded with and induced Ventura to breach his contracts. The Exencial Operating Agreement contained an arbitration clause and, over Exencial's objection, Exencial was compelled to arbitrate its claim against Ventura. Although Morgan Stanley is not a signatory to that Operating Agreement, because Exencial's claims against Morgan Stanley arise out of the Operating Agreement and are integrally related to Exencial's claim against Ventura, Exencial is estopped from refusing to arbitrate its claim against Morgan Stanley.

¶31 The district court's order denying Morgan Stanley's motion to compel arbitration is reversed, and this case is remanded with instructions to grant Morgan Stanley's motion and order Exencial and Burns Wealth Management to arbitrate their claim against Morgan Stanley.

¶32 REVERSED AND REMANDED WITH INSTRUCTIONS.

WISEMAN, P.J., concurs, and BLACKWELL, J. (sitting by designation), concurs in part and concurs in result in part.

BLACKWELL, J. (sitting by designation), concurring in part and concurring in result in part:

¶1 I concur with all the Court's opinion except as to footnote one. Because I would deny both the appellees' motion to file a sur-reply and the appellant's request to disregard the appellees' answer brief, I have reviewed all the briefs filed in this matter.

FOOTNOTES

See LCR, Inc. v. Linwood Props., 1996 OK 73918 P.2d 1388

12 O.S.2021 § 1857

State ex rel. Okla. Firefighters Pension and Ret. Sys. v. City of Spencer, 2009 OK 73237 P.3d 125Id. And, this Court is not prevented from rendering relief in the form of an Opinion which decides whether those claims will be arbitrated or litigated in the district court. Morgan Stanley's appeal is not moot.

Oklahoma Oncology & Hematology P.C. v. US Oncology, Inc., 2007 OK 12160 P.3d 936

See Long v. DeGeer, 1987 OK 104753 P.2d 1327Carter v. Schuster, 2009 OK 94227 P.3d 149Williams v. TAMKO Bldg. Prods., Inc., 2019 OK 61451 P.3d 146

Arthur Andersen, circuit courts have recognized that they now must look to the relevant state's common law to decide when nonparties may enforce (or be bound by) an arbitration agreement." AtriCure, Inc. v. Meng, 12 F.4th 516, 524 (6th Cir. 2021). Here, we apply Oklahoma contract law and conclude that a non-signatory to an arbitration agreement may rely on equitable estoppel when seeking to compel a signatory to arbitrate.

Reeves, the Tenth Circuit applied Oklahoma contract law to order employees of a staffing company, whose employment contracts contained arbitration agreements, to arbitrate their claims against the company that hired the staffing company to provide employees to perform services, even though the company was not a party to the arbitration agreement. Reeves, 17 F.4th at 1015 (quoting High Sierra Energy, L.P. v. Hull, 2011 OK CIV APP 77259 P.3d 902