BORDEN et al. v. DAY.

No. 32082.   April 16, 1946.

Rehearing Denied May 7, 1946.

*168 P. 2d 646.*

Harry Seaton, of Tulsa, for plaintiff in error.

W. O. Moffett, of Tulsa, for defendant in error.

DAVISON, J. Maybell Day, hereinafter referred to as plaintiff, commenced this action in a justice of the peace court in Tulsa county, to recover from R. F. Borden, Jr., and LeRoy Borden, copartners, d/b/a Borden Restaurants, hereinafter referred to as defendant, a certain sum for wages alleged to be due

her as a chef in one of defendant's restaurants. Upon hearing of the cause in the justice court, plaintiff recovered judgment in the sum of $11.66 and costs. Thereafter defendant appealed the case to the court of common pleas. After a trial de novo it was agreed by and between the parties that the court might take the case out of the hands of the jury. Thereupon, after recalling the plaintiff for further examination, the court took the case under advisement and thereafter rendered the judgment for her in the same principal amount she recovered in the justice court. From said judgment, defendant has perfected this appeal.

The controversy arose after plaintiff quit her job with the defendant. The amount involved represents two days' wages at her agreed rate of pay of $35 per week. After plaintiff quit on the same day that she notified defendant of her intention to do so, the defendant claimed the right to deduct two days' pay from the total sum due her for services in accord with a provision set forth on the application form which plaintiff signed when applying for the position, as follows:

"Applicant agrees that after he becomes employed he will give forty-eight hours notice of his intent to leave employment or forfeit two days pay."

The plaintiff asserts that the trial court was correct in holding this application for employment invalid as a binding written contract between herself and the defendant because of its lack of mutuality. Counsel for the defendant concedes that said paper or instrument "is not a contract in the usual sense of the word," but takes the position that such was not necessary in order for plaintiff to be bound by said writing. He asserts that merely as a rule of her employer, the quoted provision was binding on plaintiff if she had notice of it. That an employer may promulgate reasonable rules to govern the service of his employees cannot be questioned, and it is an implied condition of the employee's service or employment that he or she will obey such rules. 35 Am. Jur. 514, § 83; 39 C. J. 132, § 173. An employee, however, cannot be penalized for the violation of a rule of which he has had no notice and which he has not agreed to observe. Id. and 35 Am. Jur. 503, § 72. And whether the employee had actual knowledge of the rule in question and with such knowledge, either expressly or by conduct from which the same conclusion can be implied, agreed to comply therewith, are questions to be resolved from the facts and circumstances of the particular case. See 35 Am. Jur. 703, § 280, and annotation to Nolan v. New York, N. H. & H. R. Co., 70 Conn. 159, 39 Atl. 115, 43 L. R. A. 305, 357; Harmon v. Salmon Falls Mfg. Co., 35 Me. 447, 58 Am. Dec. 718, and Matthews v. Industrial Lumber Co., 91 S. C. 568, 75 S. E. 170, Ann. Cas. 1914A, 45.

In the present case, the fact that plaintiff signed the application on which the defendant's rule with reference to the notice it required of its employees before leaving its employment would ordinarily raise a presumption that she had knowledge of the rule, if the same criteria were applied to it that applies to formal contracts, deeds and other instruments of such effect and solemnity. But the presumption that one who has had the opportunity to read or become familiar with a contract he has entered into has done so may be overcome by a showing of actual facts and circumstances to the contrary. There are reasons founded upon public policy and the sanctity of contracts for requiring a strong showing of fraud, duress, mistake or some equally valid excuse for such ignorance, when a party seeks, on the ground of ignorance of its contents, to avoid his obligations under a solemn contract he has admittedly entered into. 12 Am. Jur. 629, § 137; 13 C. J. 370, § 249, note 25. On the other hand, an agreement signed without negligence under the belief that it is an instrument of a different character is void. And in the instance of papers or writings having neither the form nor appearance of a contract, to put a person signing or accepting same upon notice that such action would have con-

sequences of an obligatory character, the presumption above referred to has not been regarded as a formidable obstacle to justice. 13 C. J. 278, § 77, 17 C. J. S. 377, 487, §§ 31, 137; 12 Am. Jur. 628, § 137. Especially should this be true where the writing was drawn by and is for the benefit of the party seeking to enforce it Therefore, we do not think that in the present case unusual or overwhelming weight should be given the fact that plaintiff signed the application for employment upon the issue of whether or not she had knowledge of defendant's rule as to notice before quitting. Besides not being a contract in form, as conceded by counsel, the application was not such an instrument as usually has for its principal purpose the serving of prospective employees with notice of the defendant's rules and regulations. In general, the application form signed by plaintiff was only a questionnaire. Its principal purpose and fully three-fourths of its volume was used for obtaining answers to written questions appearing thereon that would apprise her prospective employer of plaintiff's qualifications for the position she was seeking. From the character and form of the instrument, it is reasonable to believe plaintiff might have answered all the questions on the application form and affixed her signature thereto without noticing the provision in question. And that, in short, is what she testified. It also appears that the application was signed in June and that plaintiff did not go to work for defendant until the latter part of October. Plaintiff testified positively that when she finally went to work there was nothing said about the application and that she did not know the provision concerning notice was in it. It further appears that plaintiff held her position only a few days, quitting on November 1st, and she testified that during that short time one other employee left defendant's employment, that said employee was discharged, and was given no notice of the termination of her employment by defendant. She further testified that after quitting in the middle of the week she went back on Friday, the restaurant's next regular pay day, to get the pay due her and it was not until a pay check was delivered to her and she called Mr. Borden's attention to the fact that it was not in full payment that she learned that defendant required its employees to give 48 hours' notice before quitting and reserved the right to withhold two days' pay for failure to comply with such requirement. In contradiction of plaintiff's testimony, defendant's manager, Evelyn Morrison, testified that at the time plaintiff signed the application, she explained to her thoroughly the provision with reference to notice. On direct examination, Mr. Borden testified that he had no notice whatsoever that plaintiff was going to quit and didn't know she had, until she failed to report for work on November 2nd. On cross-examination he seemed to remember plaintiff coming to his office the day she quit and informing him she was going to. When recalled for further examination, after his manager had testified, he claimed that when she came to his office, he reminded her that she had agreed to give two days' notice if she quit, and that he tried to persuade her to stay. Plaintiff had testified that she went to Mr. Borden's office on that occasion and that he tried to persuade her to stay, but denied positively that at that time anything was said about her giving, or being under any duty or obligation to give, any other or further notice that she was quitting.

Thus it will be seen that on the basis of plaintiff's testimony standing alone, one could only conclude that though she signed the application she did not read the provision thereon with reference to the 48 hours' notice and that she was never otherwise apprised that defendant had such a requirement, until after she had quit, and that consequently her working for defendant could not be considered an acquiescence in or agreement to abide by such a rule or regulation. While it is true that the portions of her testimony most vital to the issues involved were disputed by the other two witnesses in the case,

they, like plaintiff, were persons who from the very nature of their positions might very naturally have been partisan in their feelings and views. It was within the province of the trier of the facts to weigh the testimony as a whole, to consider many factors bearing upon the veracity of the witnesses and the credibility of their testimony and to accept the testimony of the plaintiff as true. McIntosh v. Funge, 210 Cal. 592, 292 P. 960, 74 A. L. R. 420; Brooks v. Mitchell, 163 Md. 1, 161 Atl. 261, 84 A.L. R. 547; City of Guthrie v. Shaffer, 7 Okla. 459, 54 P. 698.

The judgment of the trial court is supported by competent evidence and is affirmed.

GIBSON, C.J., and OSBORN, BAYLESS, and ARNOLD, JJ., concur. HURST, V.C.J., and RILEY and CORN, JJ., dissent.

———

CORN, J. (dissenting). I am unable to agree with the majority opinion, based as it is upon the theory that an agreement signed without negligence, under the belief that it is an instrument of a different character than a contract, is void. And, where a paper or writing does not have the appearance of a contract, to put the signer upon notice that his action will have consequences of an obligatory character, the presumption that the signer knew of rules contained therein cannot stand in the face of testimony that no notice was brought home to the signer of such condition contained therein.

Supporting this theory the opinion cites and relies upon the rule as to interpretation of contracts contained in 12 Am. Jur. § 136, p. 631, and 13 C.J. § 77, stating the general rule that:

"An offeree is not bound by the unknown terms of a document by his acceptance of the same without objection, where the document delivered to him purports to be, and would by a reasonable man be understood to be, merely a check or voucher, and not a contract, as in the case of a baggage receipt or check, an ordinary railroad ticket, and other receipts and papers of a similar character." But see 12 Am. Jur. § 137, P. 628.

While holding that the writing in question here is not a contract, but only a questionnaire, having no purpose except to apprise defendants of plaintiff's qualifications, the majority opinion attempts to apply the usual rules of construction of contracts to the instrument in order to uphold the judgment.

If the parties had no written contract, the problem then becomes one of determining the basis of the contract of employment under which the plaintiff worked for defendants. The undisputed evidence shows plaintiff filed her application for employment with defendants. The offer was not made by the defendants. Plaintiff offered her services to the defendants on certain conditions, in return for their promise to pay her for her labor. The application set forth plaintiff's qualifications, previous experience, salary expected, and further provided:

"Applicant agrees that after he becomes employed he will give forty-eight hours notice of his intent to leave employment or forfeit two days pay. Applicant also agrees to return all linens furnished or rented to him by Bordens or the linen supply company or to pay for them."

The promise to give notice of her intention to quit work was a condition defendants had the right to require from any person applying for work, and was as much a part of plaintiff's offer of her services as that part of her offer asserting her qualifications as a chef. When plaintiff signed and filed the application she offered her services upon certain conditions, and the condition was certainly not a requirement of the type not expected to be contained in an application. When defendants accepted plaintiff's offer by advising her to come to work, the parties entered into their contract, based upon all the conditions asserted in the application. There was nothing left to be implied. Plaintiff had agreed to accept employment under enumerated conditions, and defend-

ants employed her upon that basis. At that time their respective rights and liabilities became fixed.

An offer is defined (17 C.J.S. § 36) as "the signification by one person to another of his willingness to enter into a contract with him on the terms specified in the offer, a statement by the offerer of what he will give in return for some promise or act of the offeree. . . ." Casual consideration of the record reveals that the offer was made by the plaintiff, and this offer contained the provision now complained of by plaintiff.

The majority opinion ignores the fact that these parties entered into their contract at the time defendants actually hired plaintiff, and assert that the paper containing the provision was an application only. However, the opinion immediately applies to the writing certain rules as to interpretation of contracts —principally the rule that a party is not bound by provisions of a contract of which he had no knowledge, or which he chooses to testify were not brought to his attention, and this in the face of the fact that the very provision in question was contained as a part of the plaintiff's written offer to accept employment, just as fully as the salary requirement entered therein by plaintiff, or that portion stating her qualifications for certain work.

The rule announced by the majority opinion simply makes the law the protector of one who, after entering a binding business arrangement, wishes to avoid that portion of his agreement which has become burdensome. This by permitting him to say that the terms set forth in the offer he made should not be binding simply because a part of his own offer was a condition required of anyone who applied for employment, although contained in his offer and not such a requirement as a party would not expect to find in, or to be considered foreign to a contract of employment.

To permit a contracting party to deny and avoid that portion of an agreement unsatisfactory to him, solely upon the ground that he was not expressly advised of such requirement, when same was contained in his own signed application which was the basis of his offer, simply provides a new rule for interpretation of contracts which further liberalizes the opportunities for evading the solemn agreements the law is said to favor. In view of the rule announced by the majority opinion, I respectfully dissent.

I am authorized to announce that HURST, V.C.J., and RILEY, J., concur herein.