WILLIAMS v. TAMKO BUILDING PRODUCTS INC



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:WILLIAMS v. TAMKO BUILDING PRODUCTS INC

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 WILLIAMS v. TAMKO BUILDING PRODUCTS INC
2019 OK 61
Case Number: 117190
Decided: 10/01/2019
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2019 OK 61, __ P.3d __

 

DANIEL WILLIAMS and BARBARA WILLIAMS, Plaintiffs/Appellants,
v.
TAMKO BUILDING PRODUCTS, INC., Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF LEFLORE COUNTY, 
THE HONORABLE JONATHAN SULLIVAN, PRESIDING 

¶0 Defendant/Appellee is a roof shingle manufacturer incorporated in Missouri. Plaintiffs/Appellants are homeowners whose contractors installed the Defendant's shingles on homeowner's roof. Plaintiffs filed suit alleging they are entitled to compensation for damage to their home caused by Defendant's faulty shingles and the expense of installing a new roof. Defendants moved to stay proceedings and compel arbitration pursuant to an arbitration agreement on the shingle's packaging. The trial court granted the Defendant's Motion to Stay Proceedings and Compel Arbitration concluding the Plaintiffs are charged with the knowledge of the contract even if they did not read it, that TAMKO has not waived its right to compel arbitration, and that the contract is not unconscionable. The Plaintiffs appealed. This Court retained this matter on its own motion.

ORDER COMPELLING ARBITRATION REVERSED AND CASE REMANDED.

Jeremy K. Ward, Franden, Farris, Quillin, Goodnight + Roberts, Tulsa, Oklahoma, for Plaintiffs/Appellants.

Stephanie L. Theban, Riggs, Abney, Neal, Turpen, Orbison, & Lewis, Tulsa, Oklahoma; Shawn E. Arnold, Lytle Soulé & Curlee, P.C. Oklahoma City, Oklahoma, and Jeffrey J. Simon, Husch Blackwell LLP, Kansas City, Missouri for Defendant/Appellee.

COMBS, J.:

¶1 The issue presented is whether an arbitration agreement printed on shingle wrapping viewed only by contractors and then discarded creates a binding arbitration agreement between the homeowner and the shingle manufacturer. We hold it does not.

FACTS AND PROCEDURAL HISTORY

¶2 A third party contractor installed TAMKO Building Products, Inc.'s (TAMKO) shingles on Daniel and Barbara Williams' (Homeowners) roof in June of 2007. In April of 2016, the Homeowners noticed that the shingles were "cracking and de-granulating." The damage to the shingles caused "structural problems to their home." The Homeowners contacted TAMKO, and TAMKO requested the Homeowners submit a warranty claim. The Homeowners complied. Three months later, TAMKO sent the Homeowners a letter offering one square of replacement shingles and a certificate for $100 to cover installation costs.

¶3 The Homeowners filed suit against TAMKO on claims of product liability, negligent design and manufacture of the shingles, and failure to warn of shingle defects. TAMKO filed a Motion to Stay Proceedings and Compel Arbitration. TAMKO based its motion on the arbitration agreement printed with the limited warranty on the wrapping of each bundle of shingles. The following is the TAMKO arbitration clause:

MANDATORY BINDING ARBITRATION: EVERY CLAIM, CONTROVERSY, OR DISPUTE OF ANY KIND WHATSOEVER INCLUDING WHETHER ANY PARTICULAR MATTER IS SUBJECT TO ARBITRATION (EACH AN "ACTION") BETWEEN YOU AND TAMKO (INCLUDING ANY OF TAMKO'S EMPLOYEES AND AGENTS) RELATING TO OR ARISING OUT OF THE SHINGLES OR THIS LIMITED WARRANTY SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION REGARDLESS OF WHETHER THE ACTION SOUNDS IN WARRANTY, CONTRACT, STATUTE OR ANY OTHER LEGAL OR EQUITABLE THEORY. TO ARBITRATE AN ACTION AGAINST TAMKO, YOU MUST INITIATE THE ARBITRATION IN ACCORDANCE WITH THE APPLICABLE RULES OF ARBITRATION OF THE AMERICAN ARBITRATION ASSOCIATION...

R. at 1-2. TAMKO argued that by purchasing and installing the shingles, the Homeowners agreed to the limited warranty and its arbitration clause. TAMKO argued that the Homeowners had the opportunity to read the warranty, or in the alternative, that the contractors who opened the product packaging were agents of the Homeowners and the agent's knowledge is imputed to the principal. TAMKO further argued that submitting a warranty claim bound the Homeowners to the arbitration clause. The Homeowners argued that they never knew of nor agreed to the arbitration clause, the clause is unconscionable, and TAMKO waived its right to demand arbitration. The trial court granted the Defendant's Motion to Stay Proceedings and Compel Arbitration concluding the Homeowners are charged with the knowledge of the contract, that TAMKO has not waived its right to compel arbitration, and that the contract is not unconscionable.

¶4 The Homeowners filed a Petition in Error as an Interlocutory Order Appealable by Right with this Court on July 10, 2018. This Court's order dated August 17, 2018 re-characterized this appeal as one from a final order. We retained the matter on July 13, 2018, and it was assigned to this office on August 19, 2019.

JURISDICTION

¶5 The Federal Arbitration Act (FAA) governs interstate commerce contracts. Rogers v. Dell Computer Corp., 2005 OK 51, ¶11, 138 P.3d 826, 829. The FAA controls substantive rights, but the Oklahoma Uniform Arbitration Act (OUAA) controls the procedure for enforcing the FAA. Rogers, 2005 OK 51, ¶15, 138 P.3d at 839. "There is no federal policy favoring arbitration under a certain set of procedural rules." Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 476 (1989). Both the FAA and the OUAA allow appeals from arbitration orders that are a final decision. 9 U.S. § 16(b)(1); 12 O.S. §1879; Green Tree Fin. Corp. -- Alabama v. Randolph, 531 U.S. 79 (2000) (holding an order compelling arbitration and dismissing the case was a final decision); Oklahoma Oncology & Hematology P.C. v. US Oncology, Inc. 2007 OK 12, 160 P.3d 936 (holding an order compelling arbitration and staying the case was a final decision). Unlike the FAA, the OUAA does not bar appeals from orders "granting a stay of any action." Compare 9 U.S.C. § 16(b)(1) (1990) ("Except as otherwise provided...an appeal may not be taken from an interlocutory order -- granting a stay of any action...") with 12 O.S. §1879 (2005) (containing no provisions for denying an appeal from an order regarding arbitration). Oklahoma precedent establishes that an order compelling arbitration and staying court proceedings is an appealable final decision under the OUAA. Oklahoma Oncology & Hematology P.C., 2007 OK 12, 160 P.3d 936.

¶6 The FAA does not preempt the OUAA's procedural rules for appeals. "The FAA contains no express preemptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." Volt Info. Scis., Inc., 489 U.S. at 477. However, state law may be pre-empted if it is "an obstacle to the accomplishment and execution of" Congress' "full purposes and objectives." Id. In Volt, the Court permitted a stay of arbitration on state statutory procedural grounds where the FAA did not provide for the stay. Id. Further, the FAA's purpose is not to force all claims to arbitration nor to expedite claim resolution. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985). "The legislative history... establishes that the purpose behind [the FAA's] passage was to ensure judicial enforcement of privately made agreements to arbitrate." Id. The OUAA procedural provisions ensure that contracts with arbitration agreements are honored; and the provisions ensure that contracts without an arbitration agreement are honored. The OUAA procedural provisions further the FAA's purposes and are not preempted.

STANDARD OF REVIEW

¶7 This Court's review of whether a valid arbitration agreement exists is a question of law reviewed de novo. Oklahoma Oncology & Hematology P.C, 2007 OK 12, ¶19, 160 P.3d at 944; Rogers, 2005 OK 51, ¶18, 138 P.3d 826, 831.

ANALYSIS

¶8 An arbitration agreement's existence is governed by state law principles. Wilkinson v. Dean Witter Reynolds, Inc., 1997 OK 20, ¶9, 933 P.2d 878, 880. The FAA does not preempt the traditional principals of state agency and contract law. See Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630-31 (2009). The FAA's purpose is "to make arbitration agreements as enforceable as other contracts, but not more so." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404, fn. 12 (1967). A valid contract requires the parties' mutual consent to the terms. Beck v. Reynolds, 1995 OK 83, ¶11 , 903 P.2d 317, 319.

I. Actual Knowledge

¶9 The Homeowners could not have had actual knowledge of the arbitration agreement and therefore could not consent. Courts presume that a buyer who had the opportunity to read a contract but did not is bound by the unread terms. Borden v. Day, 1946 OK 121, ¶4, 197 Okla. 110, 111, 168 P.2d 646, 657. Here, the buyers did not have an opportunity to read the contract. There is no evidence that the homeowners received any notice of the arbitration agreement -- not a wrapper, not a leaflet, not a brochure. The Homeowners assert they did not personally purchase the shingles, nor were they given a copy of materials containing the arbitration terms. Appellants Br. 3. The exhibits of correspondence between TAMKO and the Homeowners for the warranty claims do not contain any reference to an arbitration agreement. R. at 17, 33-40. The Homeowners never had the opportunity to read and obtain actual knowledge of the arbitration provision.

¶10 This distinguishes the present case from three of the four cases TAMKO cites in support of its proposition that "numerous courts around the nation have found TAMKO's Arbitration Clause valid and enforceable." R. at 11. In three of the cases, although the courts discuss agency law, the plaintiffs had or should have had actual knowledge of the arbitration agreement. See Am. Family Mut. Ins. Co. v. Tamko Bldg. Prods., Inc., 178 F. SupP.3d 1121, 1124-5 (D. Colo. 2016) (noting that the building owners personally selected and purchased the shingles); Hoekman v. Tamko Bldg. Prods., Inc., No. 2:14-cv-01581-TLN-KJN, 2015 WL 9591471 at *3-4 (E.D. Cal. Aug. 26, 2015) (noting that the plaintiffs personally shopped for and purchased the shingles); Krusch v. TAMKO Bldg. Prods., Inc., 34 F. SupP.3d 584, 589 (M.D.N.C. 2014) (noting that the agent received a sample shingle and brochure explaining the incorporation of a limited warranty -- material much more likely to be passed on to the principal than throw-away packaging). Here, the Homeowners did not select the shingles nor do the facts show that they or their contractor received brochures mentioning a warranty.

II. Agency

¶11 The contractors were agents of the Homeowners for the purpose of selecting and installing shingles. In the absence of an explicit agreement, the words or conduct of the parties considered in light of the surrounding circumstances can establish an implied agency. Campbell v. John Deere Plow Co., 1946 OK 189, ¶6, 403 172 P.2d 319, 320. The Homeowners authorized the contractors to select and install shingles on the Homeowner's roof. See R. at 18. The contractors purchased shingles and installed them. Id. The facts reflect that there was an agency agreement between the Homeowners and contractors.

¶12 But the scope of the contractor's authority did not include contracting away the Homeowners' constitutional right to a jury trial.

An authorization is interpreted in light of all accompanying circumstances...
(a) the situation of the parties, their relations to one another, and the business in which they are engaged;
(b) the...usages of trades or employments of the kind to which the authorization relates...;
(c) facts of which the agent has notice respecting the objects which the principal desires to accomplish;
(d) the nature of the subject matter, the circumstances under which the act is to be performed...; and
(e) the formality or informality, and the care...with which an instrument evidencing the authority is drawn.

Restatement (Second) of Agency §34. The Homeowners gave the contractor the right to buy and install shingles. TAMKO argues this gave the contractors the right to bind the principals to the arbitration agreement. R. at 11. The Oklahoma Constitution preserves the right to trial by jury. Okla. Const. art. 2, §19. A one-time selection and installation of shingles by a contractor without a formal agency agreement does not indicate an authorization to waive a constitutional right. Especially when the waiver is on material that per industry custom is opened by someone other than the consumer and then discarded. Appellants' Br. 16. The power to waive a principal's constitutional right is usually found in a power of attorney agreement. Under a power of attorney agreement, the agent is the principal's attorney in fact. Tellingly, an attorney in law representing a client does not have the power to waive a trial and settle a case without the principal's consent. 5 O.S. App. 3-A, Rule 1.2 (2007). How then could builders contracted to select and install shingles impliedly gain authority to abandon one's constitutional right to a jury trial? The opening of the shingles' wrapping did not expand the authority of the contractors.

¶13 Because the contractors lacked authority to enter an arbitration agreement, the principals' ratification of the contract is the only method of validating the contract. Ratification requires that the principal accept the benefits of the contract with full knowledge of the facts. Kincaid v. Black Angus Motel, Inc., 1999 OK 54, ¶11, 983 P.2d 1016, 1020. Here, the principals could not ratify because they did not know the material facts. The Homeowners stated they were unaware of the arbitration agreement until after they submitted a warranty claim. R. at 6. The exhibits provided by both Plaintiffs and Defendant regarding their communications do not indicate there is an arbitration agreement. R. at 17, 33-40. Further, the wrapping containing the arbitration agreement has a panel requesting the owner "retain this warranty with contractors receipt for future reference." Id. at 15. That panel does not disclose the arbitration agreement. Id. The panel specifies only the years of warranty, the shingles' color and type, and installment details. Id. Conspicuously missing is any mention of the arbitration agreement. There are no facts suggesting that the Homeowners knew of the arbitration clause, so the Homeowners could not ratify the arbitration provision.

¶14 TAMKO argues that the Homeowners had imputed knowledge of the arbitration clause because the contractors acting as Homeowners' agent could observe the information. Imputed knowledge cannot mean that an agent who enters a contract with both authorized and unauthorized provisions suddenly binds his principal to the unauthorized portions of the contract. If that were true, then the system of ratification requiring a principal be apprised of all material facts would be incongruous. A third party could circumvent ratification requirements by entering a contract with an agent that included unauthorized provisions and then hold the principal liable for those illegitimate provisions even if the principal was never given an opportunity to learn of them.

III. Third-Party Beneficiary

¶15 TAMKO argues that the limited warranty provision contained the arbitration agreement, and because the Homeowners filed a warranty claim with TAMKO they have sought to enforce their rights in that contract and cannot now disclaim the arbitration agreement provision of that contract. Appellee's Br. 22. However, the Homeowners are not seeking to enforce their rights under the limited warranty contract. Their claims arise in tort law not contract law. R. at 1-4. Nor do their tort law cases stem from a breach of contract. All of TAMKO's string-cited cases subjecting third-party beneficiaries to arbitration agreements involve claims deriving from the contract containing the arbitration agreement. Trans-Bay Eng'rs & Builders, Inc. v. Hills, 551 F.2d 370, 373-74 (D. C. Cir. 1976) (asserting breach of contract); Borsack v. Chalk & Vermilion Fine Arts, Ltd., 974 F. Supp. 293, 295 (S.D.N.Y. 1997) (asserting breach of contract); Boyd v. Homes of Legend, Inc., 981 F. Supp. 1423, 1426 (M.D. Ala. 1997) (asserting claims for breach of implied and express warranties); Ripmaster v. Toyoda Gosei, Co., Ltd., 824 F. Supp. 116, 118 (E.D. Mich. 1993) (asserting "plaintiff claims he has suffered because of defendants' alleged breach with plaintiff's employer"); Wehe v. Montgomery, 711 F. Supp. 1035, 1036 (D. Or. 1989) (asserting breach of fiduciary duty which arose from contractual agreement); Interpool Ltd. v. Through Trans. Mut. Ins. Ass'n Ltd., 635 F. Supp. 1503, 1505 (S.D. Fla. 1985) (asserting claim to enforce insurance contract); Lee v. Grandcor Med. Sys., Inc., 702 F. Supp. 252, 253 (D. Colo. 1988) (asserting breach of contract); Infiniti of Mobile, Inc. v. Office, 727 So.2d 42, 43 (Ala. 1999) (asserting claim of breach of warranty); Parker v. Ctr. For Creative Leadership, 15 P.3d 297,298 (Colo. App. 2000) (asserting a claim of breach of contract); Liberty Comm., Inc. v. MCI Telecomm., Corp., 733 So.2d 571, 573 (Fla. Dist. Ct. App. 1999) (asserting claims for fraudulent inducement to enter contract and breach of contract).

¶16 Additionally, this fact distinguishes the present case from the last of the four cases TAMKO cites to support its proposition that "numerous courts around the nation have found TAMKO's Arbitration Clause valid and enforceable."[1] Id. at 11. The plaintiffs in that case included a claim for breach of express warranty. Overlook Terraces, LTD. v. Tamko Bldg. Prods., 2015 WL 9906298 at *4 (W.D. Ky. May 21, 2015).

IV. Estoppel

¶17 The Homeowners are not estopped from challenging the arbitration agreement. Estoppel prevents one party from taking a position that is inconsistent with an earlier action that places the other party at a disadvantage. Rouse v. Oklahoma Merit Prot. Comm'n, 2015 OK 7, ¶24, 345 P.3d 366, 375. Estoppel requires:

1) a false representation or concealment of facts; 2) made with actual or constructive knowledge of facts; 3) to a person without knowledge of, or the means of knowing, those facts; 4) with the intent that it be acted upon; and 5) the person to whom it was made acted in reliance upon it to his detriment.

Sullivan v. Buckhorn Ranch P'ship, 2005 OK 41, ¶31, 119 P.3d 192, 202. The Homeowners did not know of the arbitration agreement until after they filed a warranty claim at the bequest of TAMKO. R. at 8. And, the Homeowners did not make a false representation to or conceal facts from TAMKO. An argument could be made that TAMKO should be estopped from enforcing its arbitration clause through linking it to the warranty. TAMKO concealed facts regarding its arbitration clause when discussing the warranty claim with Homeowners. The Homeowners did not know of the arbitration agreement. TAMKO intended the Homeowners to file the warranty claim and potentially bind themselves to the arbitration agreement -- deduced from its use of this exact argument in this case. The Homeowners relied on TAMKO's statements and concealment of fact in submitting a warranty claim to the detriment of the Homeowners.

V. Unconscionability 

¶18 TAMKO's adhesion contract printed on material to be discarded is unconscionable. "The basic test of unconscionability ... is whether under the circumstances existing at the time of making of the contract, and in light of the general commercial background and commercial need of a particular case, clauses are so one-sided as to oppress or unfairly surprise one of the parties." Barnes v. Helfenbein, 1976 OK 33, ¶23, 548 P.2d 1014, 1020. The arbitration clause at issue here is one-sided and was made to both oppress and unfairly surprise the Homeowners. TAMKO's definition of "owner" under the terms of the arbitration clause "means the owner of the building at the time the shingles are installed on that building. If you purchase a new residence and are the first person to occupy the residence, TAMKO will consider you Owner even though the Shingles were already installed."[2] R. at 15. "An adhesion contract is a standardized contract prepared entirely by one party to the transaction for the acceptance of the other. These contracts, because of the disparity in bargaining power..., must be accepted or rejected on a "take it or leave it" basis without opportunity for bargaining." Max True Plastering Co. v. U.S. Fid. & Guar. Co., 1996 OK 28, ¶7, 912 P.2d 861, 864. This arbitration clause is an adhesion contract, and it requires the Homeowners to surrender their constitutional right to a jury trial. Further, this adhesion contract is intentionally printed on material that will be opened and discarded by the contractor who is likely not the owner. The portion of the packaging that is "to be completed by Owner and Contractor" and retained recounts only the years of warranty, a description of the shingles, and installment details -- not the arbitration agreement.

CONCLUSION

¶19 The Homeowners are not bound to the arbitration agreement. The Oklahoma Constitution protects the right to a jury trial. An implied agent whose sole authority is to select and install shingles does not have the authority to waive the principal's constitutional rights. Further, the intentional printing of an agreement to waive a constitutional right on material that is destined for garbage and not the consumer's eyes is unconscionable. The Homeowners never had an opportunity to make a knowing waiver of access to the courts. The order of the trial court compelling arbitration is reversed and the case is remanded.

ORDER COMPELLING ARBITRATION REVERSED AND CASE REMANDED.

¶20 Gurich, C.J., Darby, V.C.J., Kauger, Winchester, Edmondson, Colbert, Combs, and Kane J.J., concur.

FOOTNOTES

[1] See supra ¶ 10.

[2] Hypothetically, this arbitration agreement binds a purchaser of a new home completed by a builder a year earlier. The builder binds the homeowner even though at the time the builder entered the contract with TAMKO the builder was not the Homeowner's agent. Nor would the homeowner have any knowledge of the agreement or opportunity to negotiate.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1997 OK 20, 933 P.2d 878, 68 OBJ 786, Wilkinson v. Dean Witter Reynolds, Inc.
Discussed
 1946 OK 121, 168 P.2d 646, 197 Okla. 110, BORDEN v. DAY
Discussed at Length
 1946 OK 189, 172 P.2d 319, 197 Okla. 403, CAMPBELL v. JOHN DEERE PLOW CO.
Discussed
 1995 OK 83, 903 P.2d 317, 66 OBJ 2408, Beck v. Reynolds
Discussed
 2005 OK 41, 119 P.3d 192, SULLIVAN v. BUCKHORN RANCH PARTNERSHIP
Discussed
 2005 OK 51, 138 P.3d 826, ROGERS v. DELL COMPUTER CORPORATION
Discussed at Length
 1996 OK 28, 912 P.2d 861, 67 OBJ 806, Max True Plastering Co. v. U.S. Fidelity and Guar. Co.
Discussed
 2007 OK 12, 160 P.3d 936, OKLAHOMA ONCOLOGY & HEMATOLOGY P.C. v. US ONCOLOGY, INC.
Discussed at Length
 1976 OK 33, 548 P.2d 1014, BARNES v. HELFENBEIN
Discussed
 2015 OK 7, 345 P.3d 366, ROUSE v. OKLAHOMA MERIT PROTECTION COMMISSION
Discussed
 1999 OK 54, 983 P.2d 1016, 70 OBJ 1829, Kincaid v. Black Angus Motel, Inc.
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 1879, Appeals
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA