MAGEL v. NUVEEN
2023 OK CIV APP 13
529 P.3d 928
Case Number: 119962
Decided: 04/04/2023
Mandate Issued: 04/27/2023
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2023 OK CIV APP 13, 529 P.3d 928

 

JESSICA MAGEL, Plaintiff/Appellee,
v.
ERIK NUVEEN, M.D.; NUVEEN COSMETIC & RECONSTRUCTIVE SURGERY, P.L.L.C. dba Cosmetic Surgery Affiliates; COURTNEY CAPLIN, M.D.; and COURTNEY CAPLIN, P.L.L.C., Defendants/Appellants,
and
JENNIFER MATTHESAN, M.D., Defendant.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE ALETIA HAYNES TIMMONS, TRIAL JUDGE

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED 
WITH INSTRUCTIONS TO COMPEL ARBITRATION 

Steven T. Horton, HORTON LAW FIRMOklahoma City, Oklahoma and
Charles E. Soechting, Jr., SIMON GREENSTONE PANATIER, PC, Dallas, Texas, for Plaintiff/Appellee

Kari A. Hawthorne, Meilani C. Kaaihue, JOHNSON HANAN VOSLER HAWTHORNE & SNIDER, Oklahoma City, Oklahoma, for Defendants/Appellants

JOHN F. FISCHER, JUDGE:

¶1 Defendants Erik Nuveen, M.D., Courtney Caplin, M.D., and their respective professional liability corporations (Doctors), appeal from the district court's order denying their motion to compel arbitration of claims in an action filed by Plaintiff Jessica Magel. The issue is whether the parties entered into a valid, enforceable agreement to arbitrate Magel's claims, all of which concern allegations of Doctors' medical negligence in the performance of elective cosmetic surgery and subsequent revision surgeries.

¶2 However, the district court also held, as a matter of law, that the Arbitration Agreement was not valid or enforceable because, by plain language, the agreement required signatures from both parties and a physician's signature does not appear on the agreement. It is undisputed that Magel signed the Arbitration Agreement and other surgery-related documents during a pre-surgery appointment and that the Doctors performed the surgery contemplated in that agreement. It is also undisputed that Magel's surgeon electronically signed the visit note for the pre-surgery appointment and Doctors have never contended they were not bound by the agreement to arbitrate. Whether any other method of execution or manifestation of the Doctors' consent was required is a condition precedent the arbitrator, not the court, must decide.

We affirm in part, reverse in part, and remand with instructions to grant the Doctors' motion to compel arbitration.

BACKGROUND

¶3 The district court record reveals that in March 2019 Magel, a Texas resident, consulted by phone with Cosmetic Surgery Affiliates (Doctor Nuveen's PLLC) regarding elective cosmetic surgery. Doctors recommended that Magel undergo surgical procedures, collectively referred to as a "mommy makeover," which included a breast augmentation and an abdominoplasty, also called "tummy tuck." Magel indicated she wished to proceed with the recommended surgical procedures, and Doctors emailed her various documents including, for example, consent forms, a "Consultation + Payment Policy" and a "Revision Policy." Magel printed, reviewed and signed those documents. This series of emailed documents did not include an arbitration agreement.

¶4 When Magel appeared for her in-office appointment on April 1, 2019, the receptionist handed her an electronic tablet with additional forms to review and sign, including a three-page "HIPAA Notice of Privacy Practices," "Photo/Video Consent" and a two-page Arbitration Agreement. Magel signed each of these forms, along with the Arbitration Agreement, on April 1 during her appointment. Each form had a designated signature line for "Patient/Agent/Guardian," but none of the forms had a designated signature line for a physician. Magel's surgery was scheduled for April 8.

¶5 When Magel appeared for surgery on April 8, she was provided a "Patient Consent Form." This consent form contained in excess of fifty consecutively numbered pages, merging the individually titled, separate forms, including the Arbitration Agreement, into one continuous consent document. The Arbitration Agreement section begins at the lower portion of the twelfth page of the April 8 Patient Consent Form document, continuing through the top portion of the fourteenth page. The internal signature lines for "Patient/Agent/Guardian" are blank on these merged forms. Magel signed the last page of the April 8 Patient Consent Form on the signature line for "Patient/Agent/Guardian." There was no physician signature line on that page.

¶6 Magel suffered complications from the April 8 procedure, portions of which Doctors Caplin and Matthesan had performed. On April 19, the first of two revision surgeries was performed on Magel. Doctors did not ask Magel to sign another arbitration agreement prior to this first revision surgery.

¶7 Doctor Nuveen performed the second revision surgery on June 21, 2019. When Magel appeared for that surgery, she was given "Follow-Up Instructions," individual forms to sign separately for breast augmentation, liposuction/fat transfer and capsulectomy. She also was given a consecutively numbered fifty-four-page Patient Consent Form document and her signature, dated June 21, 2019, appears on several of those pages. An Arbitration Agreement, with terms identical to the one Magel signed on April 1, 2019, is found on pages one and two of the June 21 Patient Consent Form and appears to contain Magel's signature. Magel signed the final page of the fifty-four-page consent document, which also included a "Witness" signature line with the initials "GRN." No physician's signature appears on page two following the provisions of the Arbitration Agreement or on the final page of the Patient Consent Form. There are no physician signature lines.

¶8 On March 11, 2021, Magel filed suit against Doctors. She alleged that she suffered injuries as a result of Doctors' failure to follow the applicable standard of care in performing the surgical procedures related to her mommy makeover. Magel sought damages based on alleged negligent care and treatment. She also sought an award of punitive damages against Doctors.

¶9 By special appearance, Doctors filed a Joint Motion to Dismiss, Or, Alternatively, To Compel Arbitration and Stay Judicial Proceedings. Doctors asserted that identical, valid and enforceable arbitration agreements dated April 1 and June 21, 2019, existed between the parties and applied to all claims raised in Magel's petition. Doctors argued that the Federal Arbitration Act and Oklahoma Uniform Arbitration Act applied and required the district court to enter an order compelling arbitration. See 9 U.S.C. §§ 1-16; 12 O.S.2021 §§ 1851-1881.

¶10 Magel objected to Doctors' motion on several grounds. Magel argued that Doctors' complete failure to provide her any explanation of arbitration or of the terms of the Arbitration Agreement was equivalent to misrepresentation and constituted fraudulent inducement. She asserted that the Arbitration Agreements were unconscionable. Magel argued that the agreements were not valid and enforceable agreements to arbitrate under federal and Oklahoma law. She pointed out that Doctors had not signed either arbitration agreement, contrary to the specific language requiring that it "must be completed and signed by both parties prior to entering into the agreement for surgery." Magel also challenged the authenticity of what was purportedly her signature on the June 21, 2019 Arbitration Agreement.

¶11 The district court determined that an evidentiary hearing was necessary prior to ruling on Doctors' motion to compel arbitration and allowed a sixty-day period for the parties to engage in limited discovery. There were two hearings on the matter. Magel and Dr. Caplin testified at the first hearing.

¶12 Magel testified, unequivocally, that she signed the April 1 Arbitration Agreement. She did not dispute signing any other documents presented for her signature, except for the June 21 Arbitration Agreement. Magel maintained she had no recollection of signing the Arbitration Agreement included within the June 21 Patient Consent Form document and that the signature immediately following the agreement's terms was not hers. Magel also testified that neither Doctors nor their staff provided her with any general information on arbitration. No one discussed or explained any of the agreement's terms to her and she asked no questions about them.

¶13 Dr. Caplin testified regarding facility policies. She stated that Doctors and staff did not discuss the Arbitration Agreement with, or explain it to, their patients.

¶14 Dr. Caplin testified regarding printed versions of the Arbitration Agreement and other documents that Magel had signed electronically. Magel submitted them as hearing exhibits. There was no physician signature line on the face of the Arbitration Agreements, as printed. But according to Dr. Caplin, all forms indicating Magel's signature on April 1, signed electronically or otherwise, were contained in Magel's patient note for her visit on that date. Dr. Caplin testified that the note for Magel's April 1 visit was "preliminarily submitted" until finalized by the physician/surgeon. It was Doctors' policy to "pull up" the patient's electronic chart for a particular visit, review every patient-signed document, look through the photos and electronically "sign-off" on that visit to show that everything was completed and finalized. Dr. Caplin testified that, by viewing Magel's chart through their software program, one could see a surgeon's electronic signature on a particular visit. Dr. Caplin testified that the electronic record for a visit showed "preliminary" across it "in big bold letters," if it had not been finalized.

¶15 The district court stated from the bench that, based on the evidence presented, there was a material issue of disputed fact regarding the June 21 agreement because the patient signature on that agreement did not appear to match Magel's signature on the April 1 agreement. The district court questioned whether Magel's signature on the April 1 Arbitration Agreement was sufficient to bind the parties to arbitration regarding the surgeries that followed Magel's first surgery on April 8. In addition, the court stated:

[I]f you have an Agreement that requires both signatures on it, then it would [be] helpful . . . to have [s]ome evidence that it had been signed. . . . And so -- I'm not really convinced that signing off on a medical chart transmutes to we signed off on the Arbitration Agreement. . . . I mean, that's a significant document that . . . on both sides, that requires it to be signed.

During a discussion with Doctors' counsel, the court agreed that electronic signatures are permissible "if they're on the document." The district court continued the hearing to allow for supplemental briefing on the issues.

¶16 The parties' supplemental briefs focused on (1) whether Oklahoma contract law required both parties to sign the Arbitration Agreement on its face; (2) whether Dr. Caplin's signature on the April 1 "Visit Note" satisfied the requirement that the Arbitration Agreement "must be completed and signed by both parties prior to entering into the agreement for surgery;" and (3) whether the April 1 Arbitration Agreement covered Magel's revision surgeries. Magel attached as "Exhibit 3" to her brief a print-out of the "Visit Note -- April 1, 2019," which shows Dr. Caplin's post-surgery signature: "Electronically Signed By: Courtney Caplin, 04/09/2019 11:07 AM CDT" as the "Primary Provider."

¶17 After reviewing the supplemental briefs and hearing counsels' arguments, the district court denied Doctors' motion to compel arbitration. In its order, the court found the arbitration agreements were not unconscionable and Doctors had no duty to explain arbitration to Magel or discuss terms of the arbitration agreements with her. The district court determined, however, that material questions of fact existed regarding the authenticity of Magel's signature on the June 21, 2019 Arbitration Agreement "sufficient to deny enforcement of [that] agreement." The district court further determined that by "plain language" both the April 1 and June 21 Arbitration Agreements "required the signatures of both parties to be enforceable and that the agreement was not signed by [Doctors]." The district court ruled, therefore, that no valid and enforceable arbitration agreement existed related to Magel's surgeries. The court allowed Doctors twenty days to file a response to Magel's petition. Doctors appeal.

STANDARD OF REVIEW

¶18 "The trial court's denial of a motion to compel arbitration is to be reviewed de novo." Howell's Well Serv. v. Focus Grp. Advisors, 2021 OK 25507 P.3d 623See Williams v. TAMKO Bldg. Prods., Inc., 2019 OK 61451 P.3d 146Dobson Tel. Co. v. Okla. Corp. Comm'n, 2019 OK 27441 P.3d 147

ANALYSIS

I. Applicable Law

¶19 The Federal Arbitration Act and Oklahoma Uniform Arbitration Act both recognize a policy favoring the arbitration of private disputes. "The FAA controls substantive rights, but the Oklahoma Uniform Arbitration Act (OUAA) controls the procedure for enforcing the FAA." Williams, 2019 OK 61Rogers v. Dell Computer Corp., 2005 OK 51138 P.3d 826See Sutton v. David Stanley Chevrolet, Inc., 2020 OK 87475 P.3d 847

¶20 "An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." 12 O.S.2021 § 1857See Rogers v. Dell Computer Corp., 2005 OK 51138 P.3d 826

¶21 "A claim which attacks the enforceability of an arbitration provision itself, rather than just the existence of the contract in general, may be challenged in court." Sutton, 2020 OK 87 Signature Leasing, LLC v. Buyer's Grp., LLC, 2020 OK 50466 P.3d 544Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04, 87 S. Ct. 1801, 1806 (1967)). In determining whether a valid agreement to arbitrate exists, the district court "should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924 (1995). Accord Rogers, 2005 OK 51138 P.3d 82612 O.S.2021 § 1858

¶22 An essential element of a contract is mutual consent. 15 O.S.2021 § 2Oklahoma Oncology & Hematology P.C. v. US Oncology, Inc., 2007 OK 12160 P.3d 936Id., 160 P.3d at 944-45. Just as with any other contract, defenses such as fraud, duress and unconscionability may invalidate an agreement to arbitrate. See 12 O.S.2021 § 1857See also Sutton v. David Stanley Chevrolet, Inc., 2020 OK 87475 P.3d 847

II. The Arbitration Agreement

¶23 The April 1 and June 21 Arbitration Agreements at issue in this case contain identical language. The April 1 agreement, which Magel does not dispute signing, is a separately paginated two-page document entitled "Arbitration Agreement." It provides, in pertinent part:

An arbitration agreement is intended for use in the resolution of disputes. This agreement must be completed and signed by both parties prior to entering into the agreement for surgery, so that in the event of a dispute this contract will be in place to limit the expense and time necessary for civil litigation in a court. (Emphasis added).

In consideration of this agreement, [Doctors], their employees and assistants as assigned, herein called the Physicians, to render certain medical and elective surgical services for hereinafter named patient. [sic] (emphasis added). Physician and the patient, do hereby agree to the following:

1. It is understood that any dispute as to negligence in action or inaction, or medical malpractice, that is as to whether any medical service rendered under the contract were [sic] unnecessary, unauthorized or were [sic] improperly, negligently or incompetently rendered, will be determined by submission to arbitration as provided by the laws of the State of Oklahoma, Title 15, Oklahoma Statutes, Section 801, et seq., . . . both parties to this contract, by entering into it, are accepting the use of arbitration as a method of dispute resolution and are giving up their right to have any such dispute decided in a court of law before a jury. . . . (Emphasis added).

2. In the event of any claim, demand, controversy, civil action or dispute, including but not limited to personal injury, malpractice, negligence or any tort . . . [brought] by Patient . . . against Physician or any of Physician's [officers, agents or employees or staff physicians] agreeing in writing to be bound by contract to this arbitration provision of the agreement THE SOLE METHOD FOR RESOLVING SUCH DISPUTE SHALL BE BY BINDING ARBITRATION ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION. . . . The arbitrator will be agreed upon by mutual consent of the parties. . . . (emphasis added).

There is one signature line following the text on the second page of the Arbitration Agreement. The signature line is for the "Patient/Agent/Guardian." Magel signed it. No physician signature line appears on the Arbitration Agreement.

III. Arguments on Appeal

¶24 Doctors' appellate propositions of error focus on the April 1 Arbitration Agreement.

¶25 Doctors argue that under the circumstances of this case the absence of a physician signature on the face of the April 1 Arbitration Agreement does not render the agreement invalid. Doctors assert that they indicated their intent to be bound by the Arbitration Agreement by performing the mommy makeover surgery on April 8. And Dr. Caplin's April 9 post-surgery electronic signature, her "sign off" on Magel's April 1 visit, further indicates Doctors' assent to, or intention to ratify, the April 1 Arbitration Agreement.

¶26 Doctors also argue that Oklahoma contract law does not mandate a physician's signature on the April 1 Arbitration Agreement. The only required signature would be Magel's signature, as she is the party objecting to arbitration. If, however, a physician's signature on the Arbitration Agreement is deemed a condition precedent to the agreement's existence, validity or enforcement, then Doctors argue, pursuant to 12 O.S.2021 § 1857

¶27 In support of the district court's judgment, Magel argues in her answer brief that no valid agreement to arbitrate can exist without the pre-surgery signature of both parties. Doctors selected the forms to use in their medical practice and Magel maintains, therefore, that they are deemed to have knowledge of the Arbitration Agreement's mutual execution requirement. Magel asserts that Dr. Caplin's post-surgery electronic signature on Magel's medical chart does not, and cannot, satisfy the execution requirement, particularly because the visit note does not specifically incorporate or even mention the April 1 Arbitration Agreement.

IV. Validity and Enforceability of the Arbitration Agreement

¶28 The testimony and exhibits in the appellate record reveal that the material facts pertaining to the presentation and execution of the April 1 Arbitration Agreement are not in dispute. Magel signed that agreement. She agreed that "[i]n the event of any claim, demand, controversy, civil action or dispute . . . THE SOLE METHOD FOR RESOLVING THAT DISPUTE SHALL BE BY BINDING ARBITRATION . . . ." That provision applies to the claims Magel asserted in her petition against Doctors.

¶29 The district court based its order denying Doctors' motion to compel arbitration on a legal determination. The district court determined, as a matter of Oklahoma contract law, that because the terms of the Arbitration Agreement required that it be "signed by both parties prior to entering into the agreement for surgery," and no physician's signature appeared on that two-page document, no valid and enforceable agreement to arbitrate existed.

¶30 In their district court briefing and in their appellate brief in chief, Doctors have described the April 1 document as a "stand-alone" arbitration agreement, perhaps to distinguish it from a single, multi-clause contract document that includes an arbitration clause within its terms. However, the hearing testimony and exhibits establish that the April 1 Arbitration Agreement was one of many consent forms and/or agreements included within the group of documents Magel signed, at Doctors' request, prior to her surgery. All documents Magel signed were part of the same transaction and related to the "mommy makeover" procedures Magel requested Doctors to perform. See 15 O.S.2021 § 158

¶31 In determining the issues, the district court focused on the absence of a physician's signature on the written form of the Arbitration Agreement. However, as previously noted, Oklahoma's Arbitration Act provides for the enforceability of an arbitration agreement "contained in a record." 12 O.S.2021 § 185712 O.S.2021 § 1852Dunbar Eng'g Corp. v. Rhinosystems, Inc., 2010 OK CIV APP 49232 P.3d 931Id. n.9 (recognizing that "acceptance of an arbitration agreement may be shown by acts, conduct, or acquiescence to the terms of the contract"). See First Nat'l Bank of Berwyn v. Raymer, 1937 OK 45871 P.2d 485

¶32 Other jurisdictions and authorities recognize this fundamental contract principle. See 2 Williston on Contracts § 6:44 (4th ed. May 2022 update) ("[A]ny written contract, though signed by only one party, will bind the other if he or she accepts the writing."). See also, Okla. Radio Assocs. v. FDIC, 987 F.2d 685, 692 (10th Cir.1993) (citing and relying on Raymer, 1937 OK 45871 P.2d 485Devon Energy Prod. Co., L.P. v. Line Finders, LLC, No. 21-6119, 2022 WL 4232404, at *2 (10th Cir. Sept. 14, 2022) (recognizing that, "[i]ndeed, 'a contract becomes binding where it is executed by one party, is forwarded to the other for execution or approval, is received and retained by the latter but never formally signed or approved by him, and both parties act in reliance upon it as a valid contract'")(citation omitted). The district court improperly based its order denying the Doctors' motion to compel arbitration on a fact that was not legally dispositive of the contract formation issue -- the issue of law the court determines when deciding a motion to compel arbitration. Signature Leasing, LLC v. Buyer's Grp., LLC, 2020 OK 50466 P.3d 544

¶33 Finally, both parties have used the phrase "condition precedent" in reference to the sentence in the Arbitration Agreement requiring that the agreement "must be completed and signed by both parties prior to entering into the agreement for surgery." Doctors argue that the purpose of a physician's signature was to indicate acceptance of and consent to be bound by the April 1 Arbitration Agreement. They indicated their consent to arbitrate and ratified the agreement through their actions. First, Dr. Caplin performed Magel's mommy makeover surgery on April 8. After surgery, Dr. Caplin reviewed the forms and documents Magel executed on April 1, 2019, and electronically signed off on the April 1 visit in Magel's medical chart. Through that process, Doctors argue, the purpose of having a physician's signature on the arbitration agreement as a condition to enforcement was satisfied.

¶34 Magel disagrees. She argues that Doctors' ability to compel arbitration depended on whether a physician's signature, dated prior to surgery, appeared on the Arbitration Agreement Magel signed. Magel asserts that Doctors could not satisfy that condition after the fact.

¶35 "A 'condition precedent' of a contract is one which calls for the performance of some act, or the happening of some event, after the contract is entered into, and upon the performance or happening of which its obligations are made to depend." Northwestern Nat'l Life Ins. Co. v. Ward, 1915 OK 1096155 P. 524M.J. Lee Constr. Co. v. Okla. Transp. Auth., 2005 OK 87125 P.3d 1205

¶36 Nonetheless, Magel's condition precedent argument does not require denial of Doctors' motion to compel arbitration. Where the issue of an unsatisfied condition precedent has been raised relative to an agreement to arbitrate, Oklahoma's Arbitration Act mandates that the arbitrator, not the court, resolve that issue. See 12 O.S.2021 § 1857

CONCLUSION

¶37 Doctors proved the existence of a written agreement or record, signed by Magel, to submit to arbitration all claims and disputes arising from the mommy makeover surgery she requested Doctors to perform. The district court erred in determining that Doctors could not enforce the Arbitration Agreement, as a matter of law, solely because a physician's signature did not appear along with Magel's signature on the face of a printed version of the agreement. The district court did not err in finding that the Arbitration Agreement was not unconscionable or that Magel was not induced to sign that agreement by fraud. That portion of the order appealed is affirmed.

¶38 However, the remainder of the district court's order is reversed and this case is remanded with instructions to grant Doctors' motion to compel arbitration.

¶39 AFFIRMED, IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS TO COMPEL ARBITRATION.

HIXON, J. (sitting by designation), concurs and BLACKWELL, P.J., concurs in result in part and dissents in part.

FOOTNOTES

12 O.S.2021 § 1879

Sutton v. David Stanley Chevrolet, Inc., 2020 OK 87475 P.3d 847

Cf., 9 U.S.C. § 2 ("Validity, irrevocability, and enforcement of agreements to arbitrate," applying to "[a] written provision . . . in a contract to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . .").

Cf., 9 U.S.C. § 4 ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.").

See 15 O.S.2001 §§ 801-818. Sections 801-818 of Title 15 were repealed effective January 1, 2006. See 12 O.S.2021 § 1854Signature Leasing, LLC v. Buyer's Grp., LLC, 2020 OK 50466 P.3d 544

See Okla. Sup. Ct. R. 1.11(k)(1). However, we reverse that portion of the district court's order in which that finding is made.

 

 

 

BLACKWELL, P.J., concurring in result in part and dissenting in part:

¶1 I agree with the panel's conclusion that the doctors' signatures on the arbitration agreements at issue were not required to hold Magel to her agreement to arbitrate claims arising out of the April 8 procedure.

¶2 However, the majority's analysis settles only the legal question of whether the doctors' signature was required on either the April or the June agreement. On remand, in my view, a factual question remains as to the validity of the June arbitration agreement, a document Magel contended that she never signed. The trial court failed to resolve this factual dispute when it determined, erroneously, that neither agreement was enforceable for want of a physician's signature. I would require the trial court to determine, definitively, whether Magel in fact signed this agreement, as it is possible to read Magel's amended petition as claiming independent negligence and damages stemming from the June surgery. If Magel did not agree to arbitrate claims arising from the June procedure, and she is claiming damages from that procedure separate from the April procedure, she cannot be compelled to arbitrate those claims. Thus, on remand, I would instruct the trial court to rule as to the validity of the June agreement.

¶3 For these reasons, I concur in the panel's reversal of the order denying arbitration, but I respectfully dissent as to the instructions provided on remand.

FOOTNOTES

Rubel v. Pfizer Inc., 361 F.3d 1016, 1020 (7th Cir. 2004).

See 12 O.S.2021 § 1858